# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

### MARCH TERM, 1863, AT ST. LOUIS.

[CONTINUED FROM VOL. XXXIII.]

—•◦•—

MARGARET THOMAS, Respondent, *v.* FREDERICK HESSE *et al.,* Appellants.

*Dower.*—The widow is entitled to dower in the lands which her husband held under an inchoate title, although he may have conveyed it prior to the confirmation; and, to the extent of her dower, the widow is the representative of the claimant.

*Conveyance—Dower.*—Thomas v. Meier, 18 Mo. 573, affirmed.

*Dower—Conveyance.*—If the husband sell the land without the relinquishment of dower by the wife, she will be endowed in accordance with the law in force at the time of the husband's conveyance. Under the statutes of 1825, the wife is not barred by the fact that the husband owed debts at the date of his deed or time of his death, unless the claims of the creditors be properly enforced. A third person cannot set up the debt as a bar to the action for dower.

*Dower—Action.*—Where the alienees of the husband have subdivided the land, which is held in several parcels, the dower of the widow shall be assigned in each parcel separately.

*Appeal from St. Louis Land Court.*

The plaintiff brought her petition for dower in the St. Louis Land Court, September 11, 1858. Her petition stated that she married Martin Thomas, April 15, 1820, and lived with him till he died, September 10, 1848; that during the

2—VOL. XXXIV.

marriage her husband was seized of the land in question. A summons issued on this petition September 13, 1858, and was served September 23, 1858.

The answer of defendants denied any right of dower in the plaintiff, and denied that Martin Thomas was, at any time during said marriage, seized of an estate of inheritance, or any estate or interest in the land in question, or any part of it ; — that, on the 28th of December, 1830, Thomas and wife conveyed the premises in dispute to Scott and Rule, and said plaintiff then and there relinquished her dower. (This portion of the answer set forth the relinquishment as it appears on the deed, 18 Mo. 573.) That said Martin Thomas, at and prior to his death, and at and prior to conveyances made by him of the premises in dispute, was, and ever since has been, indebted to sundry persons, whose debts so owing by said Martin now remain unpaid ; that said Martin Thomas at and prior to his death was insolvent, and his large indebtedness so remains unpaid ; that fraudulently said Thomas covered up a large real and personal estate in the hands of his wife and children, which they now hold ; and, should plaintiff recover dower, the property fraudulently held by her would stand in her hands to compensate defendants. If plaintiff is entitled to dower in these lots it is because she is entitled to dower in a large tract of one hundred and twenty-three arpens, of which these lots are part ; but plaintiff has instituted one hundred suits instead of one. That there has been no administration on Thomas' estate ; that defendants have put six thousand dollars' worth of improvements on the property.

On motion of the plaintiff, the court struck out of defendants' answer all that part relating to the debts of the deceased husband, all that part in relation to the relinquishment of plaintiff, and all that part in relation to bringing one hundred suits instead of one ; and defendants excepted to the rulings of the court.

On the trial, the plaintiff showed—

1. A patent from United States, dated May 1, 1826, including the property in question to Rufus Easton. 2. An ex-

ecution reciting judgment of six thousand four hundred and forty-eight dollars and eighty cents of Wilson P. Hunt against Rufus Easton; *fi. fa.* dated June 9, 1820; levy on the land in patent; sale, August 9, 1820; deed August 24, 1820, conveying the land to Bernard Pratte. 3. A deed from B. Pratte and wife to Martin Thomas, dated September 4, 1829. 4. That Martin Thomas married plaintiff, and died as mentioned in the petition.

The defendants' evidence was as follows:

1. A perfect Spanish grant for the land in question to Gabriel Cerré, August 17, 1798. 2. A deed from Martin Thomas and wife to Scott and Rule of December 14, 1830. 3. A deed of Thomas and wife to Jenks, April 16, 1831. 4. Scott and Rule's deed to O'Fallon, February 26, 1831. 5. O'Fallon's deed to Z. T. Palmer, March 13, 1831. 6. Palmer and wife to J. B. Brant, April 17, 1835. 7. Brant and wife to John Riggin, September 30, 1838. 8. John Riggin and wife to Philander Salisbury, January 5, 1839. 9. Salisbury and wife to J. R. Hughes, May 22, 1847. 10. John R. Hughes to defendant Hesse, March 20, 1855. The above conveyances from Martin Thomas and wife to Scott and Rule of December 14, 1830, down to the deed to Hesse, and each of them, conveyed the lot in question. 11. A deed from Pascal Cerré and others, being the children and heirs of Gabriel Cerré, deceased, to Matthew Kerr, dated September 24, 1839. This deed recites that the executors of Gabriel Cerré in July, 1805, sold the land in question to Rufus Easton, at public sale, and that the intention of the grantors is to ratify the sale, and in consideration thereof, and of one dollar, they "ratify and confirm" the land "to said Kerr and to all others holding under said Easton, all their interest in said land." 12. A deed conveying same land from William Bergy and others, dated February 11, 1836, quit-claiming all their interest in Gabriel Cerré's estate unto Josiah McLannahan and his heirs; also, to the legal representatives of Rufus Easton, John Mullanphy and Joseph C. Brown the property purchased by them respectively at the sale of the executors of Gabriel Cerré, deceased. 13.

A deed from R. L. Parret, conveying to Rufus Easton's representatives his interest, dated February 2, 1836. 14. That Rufus Easton died in 1834. This was all defendants' evidence.

Plaintiff then read in evidence archive 2270, being Gabriel Cerré's will.

The plaintiff next read letters of administration granted to Auguste Chouteau and Pascal L. Cerré, executors of Gabriel Cerré, dated May 2, 1805. Also, the report of sale by the executors of Gabriel Cerré of the land in question to Rufus Easton.

Plaintiff's instructions given:

1. The patent of the United States to Rufus Easton vested in said Easton the legal title to land in said patent described.

2. The court declares the law to be, that the effect of the deeds of Pascal L. Cerré and others, and William Bergy and others, and of R. L. Perret, is to vest in the plaintiff, under the evidence in the case, dower in the premises in said petition described.

3. Under the evidence in this case, the defendants are estopped from denying that Martin Thomas, in his lifetime, was seized of the premises in question.

Defendants' instructions refused:

1. The court decides the law to be that the record of grant, put in evidence by the defendants, from the Spanish Government to Gabriel Cerré, shows a perfect title, under said Spanish Government, in said Cerré.

2. That if the land in controversy was granted to Gabriel Cerré, in perfect title, by the Spanish Government, and afterwards the Government of the United States patented said lands to Rufus Easton, the patent to said Easton was, and is, void.

3. That, by the will of Gabriel Cerré, put in evidence, no power was vested in his executors to sell the lands in controversy, or any part thereof.

4. That, by virtue of the deed of Cerré's heirs, put in evidence in this cause, no title to the land in controversy vested in Martin Thomas.

5. That, by the evidence in this cause, said Martin Thomas was never seized of any interest in said lands, in law or equity, nor was any person so seized to his use.

6. The court decides the law to be that the deed of Martin Thomas and Margaret his wife, who is the present plaintiff, to Scott and Rule, dated December 14, 1830, is sufficient in law to pass away and extinguish all right of dower of said plaintiff in the premises therein mentioned.

*Glover, Hitchcock* and *Hayden*, for appellants.

I. The plaintiff was not entitled to dower, because her husband was never seized of an estate of inheritance in the land in question, either in law or equity. (1 R. C. 1825, p. 332.) The land in controversy was granted to Gabriel Cerré by complete title. In Menard v. Massey, 8 How. 314, is seen the form of such a title. The present is in the name of the king, and was very properly pronounced by the board a perfect title. As the title passed by the Spanish patent to Cerré, there was, when Easton presented his claim to the board, no right remaining in the United States — nothing to relinquish by a confirmation. The board could only do what they did — that is, refuse to confirm the claim, and declare, " this title is ascertained by the board to be a Spanish grant made and completed prior to October 1, 1800." By the terms of this grant, nothing remains to be done in regard to it. The authority of the officer, if any doubt was entertained of his power, would be presumed genuine from its exercise. (8 Pet. 452.) But see 2 White's Recop. 469–78, showing that the power to grant lands did reside in the Governor General of Louisiana, and was taken away after August, 1798.

The patent to Rufus Easton was void. (2 How. 318 ; 14 Mo. 585 ; 7 Mo. 503.) As Easton took no title by the patent, Thomas took none from him through the patent.

The question remains, did Easton take any title from the proceedings of Gabriel Cerré's executors ? The sale by the executors was void for want of power to sell. The will of Cerré gave no authority to sell. (1 White's Recop., p.

128, n. 33, says : " An executor cannot sell the real property of his testator unless he be authorized by the will." If the question shall be decided upon the common law, the result is the same. Hard pressed to make any title in Thomas, as either through Cerré's executors or through a patent from the United States, they next rely on certain deeds from Gabriel Cerré's heirs to " Rufus Easton's representatives." All these deeds bore date between 1835 and 1840 ; but long prior to these dates, to-wit, in 1830, Martin Thomas had con-veyed to Scott and Rule. The deeds of Cerré's heirs to Easton's representatives enured to those who were such at their dates, that is, to Joshua B. Brant and others ; Thomas, not being a representative of Easton at the date of any one of these deeds, took nothing under them.

That there can be no mistake as to this, the deeds themselves declare the grants to be to the persons then claiming under Easton. A grant to one's representatives is not a grant to him. (27 Mo. 364.) But the deeds from Cerré's heirs to Easton's representatives contain a clause ratifying the sale of the executors, and this is supposed to validate the sale from the beginning ; but, if the sale was void, as I have shown it to be, it could not be ratified. A void act is incable of confirmation. An act merely avoidable, which passes a title subject to be revoked, may be confirmed ; that is, the party may relinquish all power to set it aside, then it is made firm from the beginning—that is a confirmation. A void deed is only remedied by a new conveyance, taking effect at its date, and not relating back of the new deed. These deeds of the heirs did vest the title in the grantees when made, but did not confirm the void sale made in 1806. (3 Jarm. Con. 483 ; 3 Har. 403 ; Sto. Agency, § 240, t. p. 290, n. 5.)

II. The defendants were not estopped by any matter in the record from showing that Thomas never had any title. The defendants took possession of the land sued for in 1856 ; they bought of Hughes, March 20, 1855 ; they never claimed under Thomas, who was a trespasser without title, but under Cerre's heirs, who conveyed to Brant as the legal represen-

tative of Easton, in 1836 and 1839. Long before Hesse entered, it had been discovered that the title had never passed out of Cerré's heirs, and they sold their title to Brant, and under Brant the defendants entered and held. The fact is, Thomas never was in possession. But mere seizin does not give dower; the husband must have been seized of an estate in law or equity ; must have had an interest in the land.

III. But should it appear to the court that Hesse entered under Thomas, or that he had distinctly purchased Thomas' pretended interest, this is no estoppel on Hesse, who also held under a superior title adverse to Thomas. "It is the well established doctrine of this court that a vendee may deny the title of his vendor, and protect himself by an adverse title acquired from another." (Allen v. Moss, 27 Mo. 365.) "In a contest between two alienees, under the same alienor, one is not precluded from showing an outstanding title adverse to that of the grantor." (Joeckel v. Easton, 11 Mo. 125 ; Maclot v. Dubreuil, 9 Mo. 477 ; Page v. Hill, 11 Mo. 149 ; Blair v. Smith, 16 Mo. 273 ; Landes v. Perkins, 12 Mo. 238.) The plaintiff here seeks to show seizin of an estate of inheritance, either in law or equity, in Thomas. This is only made out by the supposed estoppel on the defendants to deny Thomas' title. If the defendants may deny Thomas' title, then there is no right of dower in plaintiff. The right of plaintiff rests wholly on the estoppel. But the estoppel does not exist; therefore the plaintiff's case is not made out. In 4 Dana, 68, the defendant was allowed to show that the title under which he entered by deed from the husband had failed, and in this way defeated the plaintiff. There is no reason in allowing the title to be denied as to the husband and not as to the wife. If the husband's title is overthrown, the wife surely has no dower. (18 B. Mon. 114.) Mr. Shepley suggests that, as the defendant must show that Brant was representative of Easton before Brant took under the deed of Cerré's heirs, and can only do this by a deed through Thomas, therefore Mrs. Thomas has dower. This does not follow. A grant to the heirs of B. could not give B.'s wife dower. A grant

to Thomas' representatives would not give Mrs. Thomas dower, much less a grant to Easton.

IV. The court erred in striking out that portion of the answer which set up the indebtedness of the deceased at the time of the conveyance by him, and up to the time of his death, and since. The statute of 1825, vol. 1, p. 333, provides "that no widow shall be entitled to dower in any lands, tenements or hereditaments until all just debts due or to be due by her deceased husband shall have been paid." (Stokes v. O'Fallon, 2 Mo. 32; Mount v. Vallé, 19 Mo. 621.)

The law in force at the time of Thomas' conveyance regulates the widow's right to dower. Persons taking title from the husband can only look to the existing law for the effect of the then conveyance ; and rights so acquired cannot be altered by subsequent legislation. (Kennerly v. Mo. Ins. Co., 11 Mo. 205.)

V. The deed of Thomas, and the plaintiff's relinquishment, passed her dower. In 12 Mo. 644, the wife owned the estate and relinquished dower, held void because she did not know her interest. In 18 Mo. 544, the rule was laid down that substantial compliance with the statute was enough. J. Gamble required the words "does not wish to retract." J. Scott did not. In Thomas v. Meier, 18 Mo. 574, Gamble held if deed was freely made, and the woman was well acquainted with contents, but omitted words "relinquishes dower," it was not good ; 19 Mo. 426, held relinquishment of dower by a woman owning estate, passed her estate ; 20 Mo. 465, took stronger ground, departing from the words of the law to uphold deed.

VI. The court erred in striking out the part of the answer in reference to property in Mrs. Thomas' hands, if that was true.

*J. R. Shepley*, for respondent.

I. The patent of the United States conveyed to Rufus Easton the legal title to the land. If there was no perfect grant, then the title was in the United States, and the United States have conveyed to Rufus Easton. But, even admitting the

title to have been in the heirs of Gabriel Cerré, yet the operation of the deeds of Cerré's heirs is to protect the rights of the plaintiff here ; for, 1. It is a confirmation of the sale made by the executors, and relates back to that time. This is the language of all the conveyances. It has the same effect as if the conveyance to Easton was made under a defective power of attorney which was subsequently ratified. It says, "we recognize this as a sale made by these persons, acting with our assent, and under our authority. We have received the avails of the sale, and we now legally confirm what equitably it was our duty to do."

II. But if not, then it was a conveyance to the legal representatives of Rufus Easton operating from the time of the conveyance alone, and the question is, who are those legal representatives ? In order to ascertain who they are, you have to begin and follow the alienations from Rufus Easton down to the present time and see what rights have been acquired under Easton, and what rights now remain, and who is clothed with them. Suppose Martin Thomas had died before the confirmatory deed was made, without having conveyed, and afterwards the confirmatory deed had been made, is there any doubt that the widow would be dowable of those lands ?

This was exactly the intention of the deeds, to grant to each just such title and interest as was vested in each, as acquired and derived under and through Rufus Easton. The grant is to those claiming under Rufus Easton ; but, in this case, the defendants are estopped from denying it, as they set up in their answer that they derive title under Martin Thomas ; and unless they do it they have no title at all, as they take no title under the confirmatory deeds of the heirs of Cerré by possibility, unless they derive title through Thomas. The defendants are estopped from denying, in this case, the seizin of Martin Thomas. (Gentry v. Woodson, 10 Mo. 224 ; Haines v. Gardner, 10 Me. 284 ; Campbell v. Knight, 24 Me. 232 ; Kimball v. Kimball, 2 Greenl. 226 ; Nason v. Allen, 6 Greenl. 243 ; Hitchcock v. Harrington, 6 John, 290 ; Brown

v. Potter, 17 Wend. 164; Wedge v. Moore, 6 Cush. 8; May v. Tellman, 1 Mich. 262; Thompson v. Egbert, 2 N. J. 459.)

It has sometimes been asserted that this doctrine did not hold good in all cases of suits for dower, but that it might be shown either, first, that the husband had not seizin of a dowable estate, or that it was only a leasehold conveyed instead of a freehold; or, second, where the defendants held the land under a separate and independent title paramount to that derived from the husband.

Neither of the exceptions to the general rule, if admitted to be good, reach this case, because the estate conveyed was, in its character, one in which the widow was dowable; and it is admitted in the answer, and shown in the proof, that but for the conveyance by Thomas, the defendant could take no title to the land. The acknowledgment of the deed of the plaintiff to deed of Thomas to Scott et al. did not operate to convey her dower in said lands. The case of Thomas v. Meier, 18 Mo. 573, is conclusive on that point. It was for the same tract, or part of it, in which the lot sued for in this action is embraced.

III. The portion of the answer setting up insolvency of Thomas, and that widow and heirs fraudulently obtained property belonging to him, were properly stricken out. The deed was made in December, 1830, under which, through Thomas, defendant derives his title. Thomas died in 1849. If the dower has relation to the time of alienation by the husband, then the act of R. C. 1825 governs the case. If it has relation to the time of death, then the R. C. of 1845 controls. The act of 1825, in the first section, declares the wife dowable in lands, &c., " which shall remain after payment of his just debts"; and also provides that she shall not be entitled to dower in any lands, &c., until all just debts of her deceased husband are paid. Now, if it be admitted that the act of 1825 governs, yet no person can take advantage of it—the defence that there were debts existing—unless that person derives under a sale for the payment of debts. The true construction of the act is given by Judge Gamble, at pp. 622–3,

in Mount v. Vallé, 19 Mo. It is not pretended in the answer that any sale has taken place for the non-payment of debts, or that any debts have ever been proved against the estate of Thomas. Suppose Martin Thomas, at the time of the alienation of this land, and at the time of his death, owed his brother fifty thousand dollars, who did not choose to exhibit it against Thomas' estate, would that deprive his widow of dower? The answer says that he was in debt when he made the deed, and in debt when he died, which, without doubt, would be true of every man that ever made a deed; but nobody ever before supposed that it prevented a widow, under the law as it then stood, from obtaining dower in land he left.

VI. Plaintiff is dowable in each of the lots as now owned. (Fosdick v. Gooding, 1 Greenl. 30 ; Peck on Dower, p. 116, Law Lib. 9 ; 5 Mon. 50.)

BATES, Judge, delivered the opinion of the court.

1. The deeds of the heirs of Gabriel Cerré to the legal representatives of Easton passed the title of those heirs to such persons as were by any means the representatives of Easton in the land, in the same manner and with the same estates, which they would have held if Easton had been the owner of that title before any conveyance was made of his interest in the land. Martin Thomas, being the assignee of Easton, conveyed to Scott and Rule such interest as he could convey, and they and their assigns took under the deed from Cerré's heirs the benefit thereof to the extent of their representation of Easton; and if Mrs. Thomas did not relinquish her dower in the land, she was a representative of Easton to that extent, and as such took the benefit of the deed from Cerré's heirs. This view of the subject makes it unnecessary to consider the question as to the perfection of the Spanish grant to Gabriel Cerré, the authority of his executors to convey the land, the validity of the patent to Easton, and the estoppel of the defendants to deny the title of Martin Thomas.

2. The deed of Martin Thomas and wife to Scott and Rule,

and acknowledgment thereof, did not effect a relinquishment of Mrs. Thomas' dower. (Thomas v. Meier, 18 Mo. 573.)

3. Martin Thomas having conveyed the land in 1830, his widow's rights must be determined by the act of 1825, which was then in force. (11 Mo. 205.) By that law, the widow was not entitled to dower "until all just debts due, or to be due, by her husband shall have been paid." If the land had been sold under execution against Thomas, or under any other proper proceeding, (during his life or after his death,) for the payment of debts, such sale would have barred the widow's dower. (Mount v. Vallé, 19 Mo. 622.) But the mere facts that Thomas died owing just debts, and that he owed just debts at the time when he made the deed to Scott and Rule, cannot be set up by defendant, who does not claim to be a creditor of Thomas, as a bar to the plaintiff's dower, especially when it appears by the defendant's allegations that there is other property covered up by conveyances in the names of the plaintiff and the children of Thomas, which may be subjected to the payment of those debts. That the widow's dower is postponed to the payment of debts is true; but if a creditor never seeks payment of his debts, a third person cannot set up that debt as a bar to her dower. The meaning of the law is, that, among claimants of rights against the estate of a deceased husband, creditors claiming payment of their just debts are to be preferred to the widow claiming dower.

4. If, during the life of the husband, his land has been alienated, and if, when his widow seeks the assignment of her dower, the land is held in several parcels by different persons, her dower shall be assigned in each parcel separately. It is neither her duty to demand it, nor her right to have it in one parcel, in disregard of the divisions made of it by her husband's alienees.

Judgment affirmed. Judges Bay and Dryden concur.