THORNTON *et al.*, *Plaintiffs in Error*, v. THE NATIONAL EXCHANGE BANK.

1. **National Banks**: POWER TO AVAIL THEMSELVES OF REAL ESTATE SECURITY. If a National bank discounts a note secured by deed of trust on real estate, the security passes to and may be enforced by the bank. The transaction is a violation of section 5137 of the National banking act; but neither the borrower nor a creditor of the borrower can avail himself of that fact. The only penalty to which the bank is liable is forfeiture of its charter, and that penalty can be invoked only by the sovereign, the United States.

2. **Contract**: ASSUMPTION OF ANOTHER'S OBLIGATION: FAILURE OF CONSIDERATION. At a foreclosure of a deed of trust upon a leasehold nterest executed by an association to secure its debts, B & T be-

came the purchasers. As payment of the purchase money they assumed the debt, and by way of indemnity to certain persons who were sureties of the association, they executed a mortgage in their favor. At the time this transaction took place the leased property was subject to a deed of trust which was subsequently foreclosed, whereby the leasehold interest was extinguished. B & T bought with knowledge of this deed of trust and without warranty of title to the leasehold, and no fraud or deceit was practiced on them. *Held*, that as between them and the sureties whom they had indemnified the liability of the latter had not been revived, and they had a right to claim the benefit of the mortgage B & T had given them.

3. **Deed:** HUSBAND AND WIFE. Where husband and wife are named at the commencement of a deed as parties of the first part, and afterward the parties of the first part are named as grantors, the instrument is the deed of both husband and wife.

4. ———: ———: CERTIFICATE OF ACKNOWLEDGMENT. Where a certificate of acknowledgment of a deed executed by husband and wife to convey lands of the wife, states that the wife, upon separate examination, acknowledged that she executed the deed and relinquished her dower in the lands, the deed will pass her fee simple interest. (Following *Chauvin v. Wagner*, 18 Mo. 546, and other cases.)

5. **Principal and Surety:** SECURITIES TAKEN BY SURETY. It is well settled that securities taken by sureties for their indemnity, inure to the benefit of the creditor, and he may resort to them for satisfaction of his debt.

6. **Deed of Trust:** TENDER OF DEBT DISCHARGES LIEN. Where two deeds of trust were given to secure several notes, all of which were held by different persons, and it was provided in each deed that if the grantor should pay one-half of the debt and interest expressed in the notes, the deed should become void, and the grantor in one of the deeds tendered to the holder one-half of his note and interest, and the holder refused the tender; *Held*, that as to that note the lien of the deed of trust was discharged.

*Error to Callaway Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

REVERSED.

Mary O. Thornton and Amos B. Thornton sued Bragg by attachment, and among others garnished the National Exchange Bank as the holder of a note for $4,744.50 made by one Lamkin. Lamkin had bought a property known as " Bragg's Hall," at trustee's sale, and in payment of his

bid had made this note to the trustee, Miller, who had assigned it to the National Exchange Bank, who claimed to hold, as to $1,000 of the amount, for the benefit of the First National Bank, and as to the remainder, for itself, and filed an interplea setting up this claim. "Bragg's Hall" had been the joint property of Bragg and Mary O. Thornton, and plaintiff's attachment was laid on the theory that the deed of trust to Miller was given to secure a National bank for a present advance of money and was, therefore, void under the National banking act, and hence, one-half of the proceeds of the sale by Miller belonged to Bragg, and was liable to attachment for his debt. As to the other half for the same reason they claimed it as the property of Mary O. Thornton. Plaintiffs obtained judgment against Bragg, but upon a trial of the interplea filed by the National Exchange Bank there was a judgment for the interpleader, to reverse which plaintiffs took this writ of error. Other facts appear in the opinion of the court.

*Nathan C. Kouns* for plaintiffs in error.

1. The National Exchange Bank took nothing by the indorsement of the notes to it but Bragg's note with Ewing's indorsement, and the lien of the deed of trust was lost. U. S. Rev. Stat., p. 998, §§ 5137, 5136; *Matthews v. Skinker*, 62 Mo. 329; *Woods v. People's National Bank*, 83 Penn. St. 57. If it were true, as claimed by the bank, that the Miller deed of trust was given to indemnify Ewing against his indorsement, the bank would still have no equity to enforce it nor any right to claim the benefit of it. The doctrine that a creditor may resort to securities made for the protection of the debtor's surety (*Burnside v. Fetzner*, 63 Mo. 107) cannot be invoked. *Aequitas sequitur legem*, and does not seek to abrogate or evade statutes, nor relieve against a general rule of law. (Willard 318, 41.) Nor can a court of equity lend its aid to enforce a security, which is, as to the creditor, an illegal contract,

nor aid the creditor to make his debt out of an illegal security in contravention of public policy, or of a statute. *Downing v. Ringer,* 7 Mo. 585; *Bank of Mo. v. Bank of Baltimore,* 10 Mo. 125; *Bank v. Clark,* 4 Mo. 59; *Griffith v. Bank,* 4 Mo. 255; *Riley v. Jordan,* 122 Mass. 231; *s. c.,* 5 Cent. Law Jour. 120.

2. The equity of plaintiffs grows out of three considerations: *First,* That there is no creditor before the court claiming the fund that has legal capacity and right to receive it: (1 Story, Eq. Jur. 27, 28, 53.) *Second,* That Mrs. Thornton, having paid the purchase money "prematurely," *i. e.* before getting a title, has a lien on the property and on the proceeds of the sale of it. (*Stewart v. Wood,* 63 Mo. 252,) and: *Third,* That by the deed of Bragg and wife to her, of May 5th, 1874, she became the legal representative of the grantors therein, and as such entitled to receive all of the proceeds of the sale under a prior deed of trust, which do not legally go to some other party before the court. *Reid v. Mullins,* 43 Mo. 307; *s. c.,* 48 Mo. 344; *Warner v. Veitch,* 2 Mo. App. 459.

3. The deed of trust executed by Mrs. Thornton and her husband did not create any lien either at law or in equity upon her estate. *Shroyer v. Nickell,* 55 Mo. 264; *Whiteley v. Stewart,* 63 Mo. 360. At the date of the deed her husband had a fifteen year lease on the third story of the building in which she had a right of dower, and her relinquishment of dower must be understood as applying to that, notwithstanding the description in the deed was of the entire property.

4. The tender made by plaintiffs discharged the lien of the deed of trust as against Mrs. Thornton's interest in the property. 1 Hilliard on Mortgages, 269; *Whelan v. Reilly,* 61 Mo. 570; 3 Southern Law Review, 712, 767.

The consideration for the assumption by Thornton and Bragg of the obligation of Berry, Crow and A. W. Ewing having failed by the extinguishment of the lease by the sale under the Miller deed of trust, these parties are

remitted to their original positions, and the liability of Berry, Crow and A. W. Ewing as sureties is revived.

*Ewing & Pope* for respondents.

1.   The proceeds of the sale should be applied as asked by the interpleader.   *Helweg v. Heitcamp*, 20 Mo. 569.

2.   This is not an effort, or a proceeding by a National bank, to enforce a debt due and secured by a deed of trust to the bank, but is a controversy over money, arising from a sale under deed of trust, given to indemnify sureties. · This case is not similar to *Matthews v. Skinker*, 62 Mo. 329.   The claim of plaintiffs is an audacious effort by debtors to defeat their sureties on the pretext that ultimately the money is to go to a National bank.   If the bank does not get its money out of this fund it will recover it from the sureties. They will be unable to get it back from Bragg's estate or the Thorntons, for they are both insolvent; and thus if plaintiffs succeed here they will have wrested from their sureties through a court of justice the proceeds of the very property which they conveyed as indemnity for their sureties.

3.   Bragg and Mary O. Thornton owned Bragg Hall as tenants in common.   Bragg and A. B. Thornton owed certain debts, evidenced by notes.   To secure these notes Bragg and wife, and Thornton and wife, executed in due form of law, and delivered their deeds of trust.   A sale is had under a prior deed of trust, and the Thorntons insist that the surplus must be paid to them as general creditors of Bragg and not to extinguish Thornton's own debt.   There is no equity in this.

4.   The deed of trust of Thornton and wife conveyed the interest of Mrs. Thornton.   *Schneider v. Staihr*, 20 Mo. 269 ; *Shroyer v. Nickell*, 55 Mo. 264 ; *Whiteley v. Stewart*, 63 Mo. 360 ; *Kinner v. Walsh*, 44 Mo. 65 ; *Brown v. Brown*, 47 ·Mo. 130 ; *Siemers v. Kleeburg*, 56 Mo. 196 ; *McQuie v. Peay*, 58 Mo. 56.

PER CURIAM.—This was a suit by attachment instituted in the Cole circuit court against Charles G. Guenther, administrator of the estate of Henry Bragg, deceased, in which the National Exchange Bank and the other parties to the cause were summoned as garnishees. A change of venue was taken to the Callaway circuit court.

On the 21st day of March, 1874, said Bragg executed and delivered to H. Clay Ewing two promissory notes, one for $2,300, and the other for $700 payable three months thereafter to H. Clay Ewing at the First National Bank, Jefferson City. On the same day, said Bragg and wife conveyed to P. T. Miller in trust to secure said notes, property in Jefferson City, known as " Bragg's Hall," and on the same day Ewing indorsed said notes to the National Exchange Bank, a corporation organized under the act of Congress in relation to National banks. On the 5th day of May, 1874, said Bragg and wife conveyed to Mary O. Thornton, by deed of that date, one undivided half of said property for the consideration of $7,000, expressly subject to said deed of trust. On the 25th day of February, 1875, said Mary O. Thornton and her husband, A. B. Thornton, and Henry Bragg and wife conveyed said property to H. Clay Ewing in trust, to indemnify the sureties of said Henry Bragg and Amos B. Thornton, in their notes, one to the National Exchange Bank for $592; one to Sarah A. Chiles for $556.75, and one to the First National Bank of Jefferson for $1,000. The note to Mrs. Chiles was afterward paid. J. R. Crow and A. W. Ewing were sureties on the notes to Mrs. Chiles and the National Exchange Bank, and together with Green C. Berry, were sureties on the note to the First National Bank. These notes bore date 3rd day of February, 1875. The suit of Thornton and wife by attachment against Bragg's administrator was substantially for a breach of covenant in the deed from Bragg to Mrs. Thornton, and by garnishment, they seek to subject the proceeds of the sale of the "Bragg

Hall" property by P. T. Miller, trustee, in the first des-
cribed deed of trust, to the payment of the judgment re-
covered by them against Bragg's administrator.    That
judgment has not been appealed from, and we have only
to consider the proceedings in the garnishment cases, from
the judgment in which Thornton and wife have appealed
to this court.   At the sale of said property by P. T. Miller,
as trustee, May 22nd, 1875, one Lamkin became the pur-
chaser at the price of $4,744.50, for which he executed his
note to said trustee, who on the same day assigned it to
the National Exchange Bank for the benefit of that bank
and the holders of the notes described in the deed of trust
of February 25th, 1875.   The garnishments were served
after the sale of the property, and after the assignment of
the Lamkin note to the bank.

　　By the assignment of the notes of Bragg to the Na-
tional Exchange Bank by H. Clay Ewing, the deed of trust
1. NATIONAL passed to the bank, and as the execution of
BANKS: power to
avail themselves the notes and the deed of trust and the ad-
of real estate se-
curity.　　　　　vancement of the money thereon by the bank
were contemporaneous acts, the transaction was a violation
of section 28 of the act of Congress, which provides as
follows:  "It shall be lawful for any such association to
purchase, hold and convey real estate as follows:   *First,*
Such as shall be necessary for its immediate accommoda-
tion in the transaction of its business;  *Second,* Such as
shall be mortgaged to it in good faith by way of security
for debts previously contracted;  *Third,* Such as shall be
conveyed to it in satisfaction of debts previously contracted
in the course of its dealings;  *Fourth,* Such as it shall pur-
chase on sales under judgments, decrees or mortgages held
by such association, or shall purchase to secure debts due
to said association.   Such association shall not purchase or
hold real estate in any other case or for any other purpose
than those specified in this section, nor shall it hold the
possession of any real estate under mortgage, or hold the

title and possession of any real estate purchased to secure any debt due to it for a longer period than five years."

The transaction betwixt Ewing, Bragg and the bank was the consummation of a loan by the bank to Bragg, and Ewing was not an accommodation indorser. Conceding, as it is claimed, that it was a violation of the foregoing section of National bank law, would the court, in a proceeding by these plaintiffs for that purpose, have annulled the mortgage? We are aware that in the case of *Matthews v. Skinker*, 62 Mo. 329, this court enjoined the sale of trust property and held the deed of trust void in a similar transaction to that between Ewing, Bragg and the bank. The judgment, however, in that case was on appeal to the Supreme Court of the United States reversed, the court holding that the deed of trust was not void, and that it was error to enjoin the trustee from selling thereunder, and that while the law authorizing the establishment of National banks, prohibits them when established from lending money on real estate security, yet if loans are made on such securities they are not void, but may be enforced. It was also held that a person borrowing money on such security could not interpose the statutory prohibition as a defense in a proceeding to enforce it, the court using the following language : " We cannot believe it was meant that stockholders, and perhaps depositors and other creditors, should be punished and the borrower rewarded by giving success to this defense whenever the offensive act shall occur. The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other contemplated by Congress. That has always been the punishment prescribed for a wanton violation of a charter, and, it may be made to follow whenever the proper public authority shall see fit to invoke its application. A private person cannot directly or indirectly usurp this function of the government." 98 U. S. 621, *sub nom., National Bank v. Matthews.*

The same doctrine is enunciated in the following cases :

*Leazure v. Hillegas,* 7 Serg. & Raw. 320; *Goundie v. The North. Water Co.,* 7 Barr 233; *Silver Lake Bank v. North,* 4 John. Chy. 370; *McIndoe v. City of St. Louis,* 10 Mo. 577; *Chambers v. City of St. Louis,* 29 Mo. 543; *Land v. Coffman,* 50 Mo. 243; *Runyan v. Coster,* 14 Pet. 122; *Wroten's Assignee v. Armat,* 7 Reporter 797. We have been cited to cases decided by several State courts, giving a different construction to the act of Congress in question from that put upon it by the Supreme Court of the United States in the case of *Matthews v. Skinker.* We cannot, however, follow them, being bound by the decision of the latter court, the peculiar province of which is to determine all questions involving a construction of the laws of Congress. Adopting that construction, we are of the opinion that plaintiffs, as creditors of Bragg, can assert no claim in the garnishment proceedings to the proceeds of the sale of the mortgaged property so far as they have been applied to the payment of the notes held by the National Exchange Bank and indorsed by H. C. Ewing.

A large surplus of the proceeds of the sale of the Bragg Hall property remains after the payment of said demand, which is claimed by plaintiffs and also by the beneficiaries in the deed of trust executed by plaintiffs and by Bragg and wife, and the only question left is as to its disposition.

The deeds of trust executed by Bragg and wife and Thornton and wife were made to indemnify the sureties on 2. CONTRACT: as- the notes mentioned, Ewing, Crow and Berry. sumption of an-other's obliga- It was alleged and proved that said debts tion: failure of consideration. were contracted before the date of the notes, for furnishing and finishing the third story of "Bragg's Hall," and that the sureties were bound for said debts, before Thornton and Bragg assumed them; that said sureties were agents or trustees of an association which had taken a fifteen-year lease from Bragg on the third story of the hall; that they executed a deed of trust conveying said interest to one Lamkin to secure said indebtedness; that

Lamkin advertised the same for sale under the deed of trust and by arrangement of all the parties, Bragg and Thornton purchased said interest and assumed. the debts for which the trust deed was executed, and that this was the only consideration for their assumption of said indebtedness. Because the lease was extinguished by the sale under the deed of trust to P. T. Miller it is contended the sureties again became bound as principals for the said debts.

Upon what principle such a result is predicated we are unable to perceive. No deceit or fraud was alleged against the sureties.. Bragg and Thornton were aware of the existence of the deed of trust when they purchased the lease. Mrs. Thornton also knew of its existence, for it was expressly mentioned in the deed from Bragg and wife, conveying to her one undivided half of the premises. There was no warranty of the title acquired by Bragg and Thornton to the leasehold interest, and no obligation express or implied that if the lease should be extinguished by a sale under the deed of trust the sureties would be responsible for the debts assumed by Bragg and Thornton. The consideration they received for assuming the debt, was the fifteen-year lease, which they took subject to the.deed of trust, and, therefore, took the risk of an extinguishment of the lease by a sale under the deed of trust.

Nor were these sureties affected or bound by the equities between Bragg and Mrs. Thornton in regard to the agreement of Bragg with her to apply the proceeds of certain notes assigned to him by her to the debt secured by said deed of trust. These notes were assigned to him as part payment of the money she was to pay for one-half of the "Bragg Hall" property, and he agreed with her to apply the proceeds in payment of said $3,000 indebtedness to the National Exchange Bank.

It is also urged by Thornton and wife that the deed of trust executed by them to indemnify the sureties, did not

**3. DEED: husband and wife.** convey her interest in "Bragg Hall," because in the acknowledgment it was stated that she relinquished her dower, and her name does not appear in the body of the deed, as a grantor therein. And *Shroyer v. Nickell*, 55 Mo. 264, and *Whiteley v. Stewart*, 63 Mo. 360, are cited as sustaining that view. In the body of the deed she is named as one of the parties of the first part, and the parties of the first part are named as the grantors. *Shroyer v. Nickell*, was a case in which an equitable defense to an action of ejectment was pleaded, and the facts relied upon were that Shroyer and wife had, by mistake, made a conveyance of another tract, intending to convey the land in dispute, and defendant asked a reformation of the deed against the wife. The court decided that as the property was not separate property of Mrs. Shroyer this could not be done, and the case has no bearing upon the question. In *Whiteley v. Stewart* the commencement of the deed named Whiteley and wife as parties of the first part, but in the body of the deed, the husband alone was named as grantor and the name of the wife did not again appear except in their signatures to the deed. The court expressly held that the deed showed upon its face that she never granted the land, but her husband was sole grantor.

In *McDaniel v. Priest*, 12 Mo. 545, it was decided that "where a certificate of acknowledgment upon a deed exe-

**4. ——: ——: certificate of acknowledgment.** cuted by husband and wife to convey lands of the wife, stated that the wife upon separate examination acknowledged that she executed the deed and relinquished her dower in the lands mentioned in the deed," the deed would not pass a fee simple interest of the wife. But in *Chauvin v. Wagner*, 18 Mo. 546, this case was overruled, and *Chauvin v. Wagner* has been followed in *Delassus v. Poston*, 19 Mo. 425; *Thomas v. Meier*, 18 Mo. 573; *Perkins v. Carter*, 20 Mo. 465, and *Thomas v. Hesse*, 34 Mo. 13.

Plaintiffs in error rely upon the doctrine that "a security will be subrogated to the rights of the creditor upon

5. PRINCIPAL AND SURETY: securities taken by surety. paying his principal's debt, and not until then." And their counsel quotes with emphasis the language of the court, in *Hearne v. Keath*, 63 Mo. 84, to the effect that the principal does not become a debtor to the surety, until the latter has paid the debt, " and until then his demand has no existence." There can be no doubt of that proposition, but it is equally well settled that securities taken by the sureties for their indemnity inure to the benefit of the creditor, who may resort to them for the satisfaction of his debt. Here the creditors ask to be subrogated to the rights of the sureties' a very different case from that considered in *Hearne v. Keath*.

6. DEED OF TRUST: tender of debt discharges lien. The deeds of trust executed by Bragg and wife and Thornton and wife of even date were made, one by Bragg and wife conveying the " Bragg Hall " property, and the other by Thornton and wife conveying the same property, Bragg and Mrs. Thornton being each the owner of an undivided half, and it was a stipulation in each of said deeds, that if the parties of the first part paid one-half of the debt and interest expressed in said notes and every part thereof, when the same became due, the deed should become void, &c. Each of the notes was held by and made payable to different persons. The National Exchange Bank held one. There was no connection of one with the others, or with either of the others, except in the deeds of trust. The holder of neither note had any interest in the payment of the others. A. B. Thornton, one of the debtors, at their maturity, tendered to the National Exchange Bank one-half of the notes that bank held against him and Bragg, and the bank refused to accept it, insisting upon payment of the whole amount. Mrs. Thornton conveyed her property to secure that half. She is, therefore, as to that, to be treated in some respects as a surety, though not personally bound for any part of the debt, and the refusal of the bank to accept the money so tendered, extinguished the bank's lien on her

property to that amount. *Olmstead v. Tarsney*, 69 Mo. 396; *Frost v. Yonkers Savings Bank*, 70 N. Y. 553. A fair construction of the deeds authorizes either of the debtors to pay one-half of either of the notes secured by the deed of trust, without being compelled to pay the other half, although both were jointly bound for the whole amount. While as between Thornton and the bank; the latter had the right to refuse to accept a portion of its debt, as betwixt Mrs. Thornton and the bank it had no such right.

After the payment of the note and interest secured by the deed of trust to Miller and the costs and expenses of executing that trust, and payment of the note held by the First National Bank with interest, and one-half of the note held by the National Exchange Bank and interest, Mrs. Thornton is entitled to any balance that may remain, not exceeding the amount of the judgment in favor of Thornton and wife against Bragg's administrator. The judgment is reversed, and the case remanded, to be proceeded with in conformity with this opinion, HENRY, J., not sitting.