St. Louis Drug Company v. Robinson.

St. Louis Drug Company v. Robinson et al., Appellants.

1. **Mortgage of Stock of Goods, Construction of:** POWER TO SELL. A mortgage of a stock of goods, furniture and fixtures in a store, which also includes in the conveyance all articles that might thereafter be added thereto, or which should be on hand at the time the mortgagee, under the provisions of the mortgage, should claim possession, does not thereby authorize a sale of any of the stock by the mortgageor.

2. **Mortgage:** STIPULATIONS: CONTRACT: CONSTRUCTION. The mortgage also provided that in case of an unreasonable depreciation in value of the mortgaged property, the mortgagee, or its legal representatives, might take possession. The evidence showed that under an oral agreement of the parties to that effect, the mortgagor, after the execution of the mortgage, continued to retail the stock of goods and made additions to the same from time to time, the additions, however, not keeping pace with the sales; that the value of the property at the time the mortgagee brought his action therefor was a little more than one-half of that on hand when the mortgage was given; that there was no material shrinkage in the price of drugs and other articles composing the stock; *Held*, that the right defendant acquired to sell under the oral agreement was subject to a corresponding duty imposed thereby, to keep up the stock to the standard of the value of that originally mortgaged, and that there had been such a breach of the stipulation of the mortgage against an unreasonable depreciation of the value of the mortgaged property as to entitle the mortgagee to possession.

3. **Corporation, Contracts of:** ULTRA VIRES. The question of *ultra vires* as affecting the validity of contracts of a corporation, can be raised only by a direct proceeding by the State against the corporation, and not in a collateral proceeding by an individual, except when the charter of the corporation not only specifies and therefor limits it to the business in which it may engage, but, by express terms, or a fair implication therefrom, invalidates transactions outside of its legitimate corporate business.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*David Goldsmith* and *George W. Taussig* for appellants.

There was not, within the meaning of the mortgage, an unreasonable depreciation in the value of the property mortgaged. The terms of the mortgage are unambiguous, and not capable of the construction given it by the court of appeals, and the recourse of the latter court to parol evidence to explain it, was in violation of the rule of law, that in no case can extraneous evidence cause a contract to be construed into what its language does not import. *Koehring v. Muemminghoff*, 61 Mo. 407; *Campbell v. Johnson*, 44 Mo. 247; *Glendale Mfg. Co. v. Ins. Co.*, 21 Conn. 37; 8 Mich. 66; 29 Ala. 684; 33 Iowa 571. Nor does the fact that the mortgage alludes to the addition of other property to the stock on hand, imply a power to sell any of that then on hand. *Hewson v. Tootle*, 72 Mo. 632; *Voorhis v. Langsdorf*, 31 Mo. 451; *Miller v. Jones*, 15 Nat. B'k Reg. 150. The filling up of the blank date of the execution of the mortgage at plaintiff's instance, without the knowledge or consent of defendant, avoids the mortgage. *First Nat. B'k v. Fricke*, 75 Mo. 178; *Bell v. Quick*, 13 N. J. L. 312; *Den v. Wright*, 7 N. J. L. 175. Plaintiff was a corporation, incorporated to manufacture and sell drugs, had no power to indorse notes for the accommodation of another, and the mortgage was *ultra vires* and non-enforceable in this action. 1 Daniels Neg. Inst., (3 Ed.) § 386; *Bank v. Bank*, 13 N.

Y. 309; *Bird v. Daggett*, 97 Mass. 494; Green's Brice's *Ultra Vires*, (2 Ed.) p. 252, and notes; *Davis v. Smith*, 131 Mass. 276. If the case of *National B'k v. Skinker*, 98 U. S. 621, decides that the defense of *ultra vires* cannot be asserted in an action by a corporation to enforce a contract which it undertook to make without the legal capacity to do so, it is inconsistent with numerous decisions of this and other courts. *Blan v. Ins. Co.*, 10 Mo. 559; *Hoagland v. Railroad Co.*, 39 Mo. 451; *St. Joseph v. Saville*, 39 Mo. 468; *Pacific R. R. Co. v. Seely*, 45 Mo. 212; *Matthews v. Skinker*, 62 Mo. 329; *City v. Gas Co.*, 70 Mo. 93; *Green v. Seymour*, 3 Sand. Ch.; *Life, etc., Ins. Co. v. Ins. Co.*, 7 Wend. 34; *Crocker v. Whitney*, 71 N. Y. 161; *Fridley v. Bowen*, 87 Ill. 151; *Fowler v. Scully*, 72 Pa. St. 456; *Woods v. People's B'k*, 83 Pa. St. 57; *Kansas, etc., B'k v. Rowell*, 2 Dill. 371; *Merchants' B'k v. Mears*, Thompson's Nat. B'k Cases 353. Nor is the contract, if *ultra vires*, so far executed that defendant is estopped from setting up its illegality. *U. S. Trust Co. v. Helmer*, 77 N. Y. 71; *Thomas v. Railroad Co.*, 101 U. S. 86; *Simpson v. Building, etc., Asso'n*, 38 Ohio St. 357; *Madison, etc., Co. v. Watertown, etc., Co.*, 7 Wis. 59; *N. W. Union Packet Co. v. Shaw*, 37 Wis. 662; *Little v. Farmers', etc., Co.*, 55 Wis. 546. The defense of *ultra vires* is good under the constitution and State statutes. Const., art. 12, § 7; 1 Wag. Stat., p. 289, §§ 1, 6. The so-called release of defendant, Robinson, in no way affected defendant Squires' interest in the property in suit. Collyer on Part., (6 Ed.) 170; Story on Part., § 322; *Halstead v. Shephard*, 23 Ala. 558; *Mellon v. Webster*, 5 Mo. App. 453; *Long v. Story*, 10 Mo. 636; *Mut. Sav. Inst. v. Enslin*, 37 Mo. 453; *Williams v. Roberts*, 6 Cold. 493; *Stegall v. Coney*, 49 Miss. 761; *Kimball v. Ins. Co.*, Bosw. 495.

*J. P. Ellis* for respondent.

The mortgage was open to construction by the light of surrounding circumstances and the acts of the parties.

*Patterson v. Camden*, 25 Mo. 13; *Bruner v. Wheaton*, 46 Mo. 363; *Koehring v. Muemminghoff*, 61 Mo. 403; *St. Louis Gas Light Co. v. St. Louis*, 46 Mo. 121. Even if the referee's theory of the construction of the mortgage be true, still it only amounts to this: that before condition broken, the plaintiff claimed possession and prematurely brought suit. Two months after suit the note matured, was not paid, and plaintiff became entitled to possession, and so continued to be entitled to date. Even although the suit was prematurely brought, the law will not return the property to defendant, he not being now entitled to it. *Boutwell v. Warne*, 62 Mo. 350; *Dilworth v. McKelvy*, 30 Mo. 149; *Wheeler v. Train*, 4 Pick. 168; *Gillham v. Kerone*, 45 Mo. 487; *Babb v. Talcott*, 47 Mo. 343; *Jones v. Evans*, 62 Mo. 375. The surrender and relinquishment of the firm's property in the firm's name, to pay firm debt, by defendant, Robinson, after suit brought, bound the co-partnership, even although Squire refused to sign the instrument. *Stegall v. Coney*, 49 Miss. 761; *Keck v. Fisher*, 58 Mo. 532; Parsons on Part., (3 Ed.) side pp. 392, 393, and note. The defense of *ultra vires* does not lie in this case. *Morford v. Farmers' B'k*, 26 Barb. 568; *Lafayette Sav. B'k v. St. Louis, etc., Co.*, 2 Mo. App. 299; Daniel Neg. Inst., (1 Ed.) § 187; *Monument Nat. B'k v. Globe Works*, 101 Mass. 57; *Union Water Co. v. Murphy's Flat Fluming Co.*, 22 Cal. 620; *Thomas v. Railroad Co.*, 10 C. L. J. 306; *Whitney Arms Co. v. Barlow*, 63 N. Y. 62; *Steam Nav. Co. v. Weed*, 17 Barb. 375; Sedgwick on Stat. and Const. Law, p. 90; *Township v. Talcot*, 19 Wall. 666; *Parish v. Wheeler*, 22 N. Y. 494; *Bissell v. Railroad Co.*, 22 N. Y. 258; *DeGroff v. Ames, etc.*, 21 N. Y. 124; *State, etc., v. Citizens' Street R'y Co.*, 47 Ind. 407; *Farmers', etc., B'k v. Railway Co.*, 17 Wis. 372; *Grand Gulf B'k v. Archer*, 8 S. & M. (Miss.) 151; *Bank v. Nevitt*, 6 S. and M. (Miss.) 513; *Wade v. Am. Col. Society*, 7 S. and M. 663; *Chester Glass Co. v. Dewey*, 16 Mass. 102; *Moss v. Lead Mining Co.*, 5 Hill 140; *Matt v. U. S. Trust Co.*, 19 Barb. 568; *The Banks v. Poitiaux*, 3 Rand. 136; *Bank v. Ham-*

*mond,* 1 Rich. (Law) 288; *Leazure v. Hillegas,* 7 S. & R. 313; *Goundie v. Northampton, etc.,* 7 Pa. St. 233; 12 Miss. 75; 16 Miss. 151; 10 Wis. 230; 16 Me. 231; 8 Wheat. 355; *Vidal v. Girard,* 2 How. 127; *Nat. B'k v. Matthews,* 8 Otto 621; *McIndoe v. St. Louis,* 10 Mo. 577; *Chambers v. St. Louis,* 29 Mo. 543; *Land v. Coffman,* 50 Mo. 243; *Thornton v. Guenther,* 71 Mo. 221; 7 Mo. App. 42; 71 Mo. 465; 63 Mo. 118; 29 Vt. 96; 44 Iowa 244. The right of the State itself to call to account a corporation for exceeding corporate powers, is limited to cases in which the constant and willful violation of the conditions of the corporate grant appear. High on *Quo Warranto,* p. 472; *Potter v. Bank,* 5 Hill 490; *Suydam v. Morris Can. B. Co.,* 5 Hill 491; 11 Barb. 213. A corporation may be a trustee for strangers to it and its purposes, provided the trust be not repugnant to, or inconsistent with, its corporate objects. *Vidal v. Girard,* 2 How. (U. S.) 127; 1 Paige 214; *Phillips Academy v. King,* 12 Mass. 546; *Amer. Academy v. Harvard College,* 12 Gray 582; *Chambers v. Bap. Ed. Soc.,* 1 B. Mon. 215; 1 Perry on Trusts, (2 Ed.) §§ 43, 44. Nor can any one but the crown question the capacity of a corporation to hold and act as trustee. 12 Clark & F. 425, 487. There was no alteration in the date of the mortgage; while the body of the instrument does not show the date which was by omission left blank, the acknowledgment contained the true date of the execution and acknowledgment, to-wit, October 19th, 1876, and inserting the date in the blank left in the body was not an alteration of the date of the instrument. The supplying of omissions which are manifest, and which are done to effectuate the intention of the parties, is not an alteration, either material or otherwise. 2 Daniel Neg. Inst., (1 Ed.) p. 362, § 1403. Defendants knew of the insertion of the omission in the body of the deed, and failed to complain of it, and are now estopped. *Pelkington v. Ins. Co.,* 55 Mo. 172, 178. Besides, Robinson, a member of defendants' firm, knowing the facts, affirmed by his acts the validity of the mortgage.

HENRY, J.—This is an action to recover possession of personal property, to-wit: Stock, fixtures and furniture of defendants' drug store. Plaintiff's claim is under a chattel mortgage, executed by defendants, to secure a $5,000 note to plaintiff, dated October 1st, 1876; payable one year after.

This suit was instituted August 14th, 1877, two months before the maturity of the note, and plaintiff bases its right to recover upon a stipulation in the mortgage, which, after providing that the mortgage property should remain in the possession of the mortgageors until the maturity of the note, contained this condition: "In case of sale or disposal, or attempt to sell or dispose of said property, or an unreasonable depreciation in the value thereof," plaintiff or its legal representatives, might take said property or any part thereof, into its possession.

The mortgage not only covered the stock, fixtures and furniture then in the store, but "any and all articles that may hereafter be added to the present stock, or fixtures or furniture, and, which may be on hand at the time the St. Louis Drug Store claims possession." The cause was referred to F. A. Wislizenus, Esq., to try the issues; and, among other facts reported as found by him, are the following: "Upon the execution of the mortgage, defendants with plaintiff's consent, and, indeed under oral agreement to that effect, continued to retail the mortgaged property, and made additions to the stock from time to time. These additions, by no means, kept pace with the sales." That: "The conduct and conversation of the parties to the mortgage, show that they understood the mortgage to require them to keep the stock of goods up to the standard of the value originally mortgaged." "That the value of the property in the defendants' drug store, at the time of the seizure, was a little more than one-half of the property on hand when the mortgage was given." "That there was no material shrinkage in the prices of drugs and other articles composing the stock."

On these facts, the question arises, was there an unreasonable depreciation in the value of the stock, within the meaning of the above proviso? The circuit court and court of appeals held that there was, and defendants have appealed from the judgment of the latter court. We do not agree with the court of appeals, that the provision of the mortgage, which contemplated additions to the stock on hand at the date of the mortgage, authorized a sale of any or all of the stock by the mortgageors. *Weber v. Armstrong*, 70 Mo. 219; *Voorhis v. Langsdorf*, 31 Mo. 452; *Hewson v. Tootle*, 72 Mo. 632. The mortgageors, therefore, under the mortgage, had no authority to dispose of the goods. The right they acquired to sell under the parol agreement, subsequent to the execution of the mortgage, was subject to a corresponding duty, imposed by that agreement, to keep up the stock to the standard of the value of the stock originally mortgaged; and it would hardly be consonant with justice to permit defendants to avail themselves of the privilege to sell under the parol agreement, and successfully claim that the diminution of the stock was with plaintiff's consent, when under the agreement by which that consent was given, defendants were to replenish the stock from time to time, as diminished by sales. If defendants rely upon the parole agreement, they must stand by all its terms.

They had no right to sell, except upon the condition that they replenish the stock, and violating that condition, they stand as if they had sold without the permission of the mortgagee. And by the terms of the mortgage, on a sale, or attempt to sell the mortgaged property, plaintiff had a right to the possession. But on plaintiff's petition its claim of the right of possession is not predicated upon a sale of the goods, but on the ground of an unreasonable depreciation in the value of the stock and other property mortgaged, and thus narrowed the grounds upon which it rested its claim.

Was there an unreasonable depreciation of the value

of the stock, etc.? The mortgage was of a stock of drugs, fixtures and furniture, as an entirety. It conveyed the following described personal property in the city of St. Louis, State of Missouri: The stock and fixtures of their drug store at the northeast corner of 5th and Olive streets, consisting as follows: One prescription case and scales; one prescription counter and contents, one show case containing rubber goods, trusses, etc., one show case containing cloth, brushes and toilet articles; one case containing hair brushes, toilet articles, etc.; one show case containing drug goods, perfumery, etc.; one soda fountain, complete; eight copper fountains, four walnut counters, marble top, etc.; all the shelving on the north, east and south sides complete; about three hundred and fifty shop bottles, glass labels, and contents; all drawers and contents, with the usual stock of patent medicines, perfumery, drugs, medicines, glass ware, toilet articles and fancy goods, etc., kept in a first-class retail drug store, together with any and all articles that may hereafter be added to the present stock of fixtures, or furniture, and which may be on hand at the time the St. Louis Drug Co. claim possession.

The stipulation, in relation to an unreasonable depreciation of the property, applied to the stock as an entirety.

The evident meaning of the parties was, that there should always be a sufficient amount of stock to keep the security as good as when the mortgage was given. This is apparent when the instrument is construed as giving no authority to the mortgageors to sell all, or any part of the stock. If there had been no other emergency in which plaintiff would be entitled to possession, except the occurrence of an unreasonable depreciation of the stock, and defendants without permission of the mortgageor, had sold one-half of the stock without replenishing, the fallacy of the argument now made by their attorneys would be more apparent.

But the fact that plaintiff stipulated, also, that in the event of a sale of the mortgaged property, it might have

possession, does not affect the construction of that part of the stipulation, relating to the depreciation in value. As was observed by the court of appeals, the sale of a part "might very much depreciate the remaining stock." The specific articles unsold might retain the same market value, and the stock, as an entirety, be greatly diminished in value. Language might have been employed in the mortgage which would more clearly express the meaning which, we think, that used conveys; but it is sufficiently manifest from the language which was employed.

Another proposition strenuously contended for by defendants' counsel, is, that plaintiff, having been incorporated to manufacture and sell drugs, had no authority to indorse notes for the accommodation of others, and that the consideration of the note which the mortgage was given to secure, was plaintiff's indorsement of defendants' notes for accommodation, and, therefore, it cannot recover. Conceding the facts to be as defendants allege, it is sufficient on this point, to say that in a line of decisions of this court, unbroken except in the case of *Matthews v. Skinker*, 62 Mo. 329, it has been held that the question of *ultra vires* can only be raised in a direct proceeding, by the State against the corporation, and not in a collateral proceeding by another, except when the charter of the corporation, not only specifies, and, therefore, limits it to the business in which it may engage, but by express terms, or by a fair implication from its term, invalidates transactions outside of its legitimate corporate business. *McIndoo v. St. Louis*, 10 Mo. 577; *Chambers v. St. Louis*, 29 Mo. 543; *Pac. R. R. Co. v. Seely*, 45 Mo. 212; *Land v. Coffman*, 50 Mo. 243. Since *Matthews v. Skinker, supra*, was decided, announcing a different doctrine, in the following cases this court returned to the doctrine of the earlier cases: *A. & P. R. R. Co. v. St Louis*, 66 Mo. 228; *St. Joe Fire. & M. Ins. Co. v. Hauck*, 71 Mo. 465; *Thornton v. Nat. Ex. Bank*, 71 Mo. 221; *Union Nat. Bank, v. Hunt*, 76 Mo. 439. The judgment of this court in *Matthews v. Skinker, supra*, was on appeal, reversed

by the supreme court of the United States, and the doctrine then announced by that court, is in harmony with that which, before, had been uniformly, and has since been repeatedly declared by this court.

The opinion of the court of appeals, delivered in this cause by Judge Bakewell, contains a full statement of the pleadings and evidence, and an able and elaborate discussion of all points made in the case, and the questions which we have not noticed, are so fully and satisfactorily disposed of in that opinion, that we have not thought it necessary to enter upon a discussion of them.

The judgment is affirmed.