GARRETT C. LAND, Appellant, *v.* COFFMAN & CHURCHILL, Respondents.

50  243
41a 676
50  243
117 289
50  243
122 408
50  243
133 552
50  243
70a  12
50  243
161  42

1. *Railroads — Lands, deeds of, to — Speculation — Railroad lands.* — It was the intention of the Legislature, as shown by the various acts creating and governing the Pacific Railroad Company (see sections 1 and 20 of its charter, Sess. Acts 1849, p. 219 *et seq.;* Sess. Acts 1851, p. 272, § 9; R. C. 1855, p. 425, § 29, and p. 438, § 57), to invest that corporation with power to hold real estate : 1st, for the purpose of aiding in the construction of its road, or raising funds to pay debts contracted in its construction; 2d, for depots, road-beds, etc. The company cannot become a large landed proprietor for purposes not connected with its creation. But the amount of lands which it may receive cannot be determined in a suit between private parties. That question can only be raised by the State, in a direct proceeding against the railroad company.

2. *Railroads — Lands, deeds of, to — Speculation in lands by railroads — Specific performance — Executory contracts.* — Although, in a suit for the specific performance of an executory contract to deed land to a railroad company, the contract may be incapable of enforcement, as being intended for purposes of speculation (see Pacific R.R. Co. v. Seeley, 45 Mo. 212), yet if the deed were in fact made voluntarily, it will be good to pass title.

*Appeal from Johnson Court of Common Pleas.*

*Elliott & Blodgett,* for appellant.

I. The second exception taken by the plaintiff, on the trial of his cause, was to the reading in evidence of the deed from Johnson and others to Billon, trustee for the railroad company. The plaintiff objected " for the reason that said deed shows upon its face that the town lots therein described were sought to be conveyed to the company for speculative purposes, and that the same was therefore void."

By reference to the deed we find that it purports to convey to the company, 1st, five and a half acres of ground (as therein described by metes and bounds), designated upon the plat of said town as depot grounds ; 2d, it seeks to convey to the company one hundred and fifty-one separate and distinct town lots, embracing every alternate lot in twenty-six different blocks, throughout said entire tract of eighty acres, and all separated by streets, avenues and alleys, from the right of way and depot grounds of the company and from each other.

In the case of The Pacific R.R. Co. v. Seeley, 45 Mo. 212, the action was to compel a specific performance of a contract to convey to such person as the directors of said company should designate, one-fourth of all the town lots contained in one hundred and sixty acres of land. This court held upon demurrer, in that case, that the contract sued on was void upon its face, for the reason that the company had no power under its charter to engage in town speculations or in the purchase of lands, and holding them for villages and towns, either to rent or sell.

. If the contract with Seeley was void upon its face for the reason that this same company had no power to purchase or speculate in one-fourth the town lots in one hundred and sixty acres of land at Tipton, then by what parity of reasoning can the defendants contend that a deed to the company by Johnson and others of one-half the town lots in eighty acres at Knob Noster (being the same amount in both cases) would be within the corporate powers of said company? The fair deduction would rather seem to be that, if the contract with Seeley was void for the reason that the company had no power under its charter to deal in town lots or other real estate, then the deed from Johnson to the company was likewise void for the same reason.

II. The third objection assigned by the plaintiff for the exclusion of said deed, and overruled by the court, was " because the deed shows upon its face that the town lots therein described were not necessary for any purpose connected with the general business of locating, constructing, managing or operating said railroad, or necessary for the purpose of carrying said road into complete and successful operation." In support of this proposition we submit that when the Legislature, by the twentieth section of the original charter, confined the operations of this company to the business of locating, constructing, managing and operating its road, and the acts necessary for the purpose of carrying the same into complete and successful operation, it was certainly intended to keep the business of the company within certain fixed limits, and to prohibit it from engaging in any kind of business wholly foreign to the purposes for which the company was created. The only acts which the Pacific Railroad Company could lawfully do under

Land v. Coffman et al.

its charter were, 1st, to locate its road; 2d, to construct its road; 3d, to manage and use its road.

The company, then, being organized for the purposes and possessing only the powers aforesaid, and the deed showing upon its face the extraordinary fact of a railroad company purchasing one hundred and fifty town lots (in addition to its depot grounds), which, in the very nature of things, and according to the common understanding of every one, could not be used for any known business connected with a railroad company, and the purchase of that number of lots being an exception to all common experience, the natural presumption is that the lots were purchased for speculation, and that they were not required by the company in its legitimate operations, and the burden of proof was upon the defendants to show the contrary; and until the contrary was shown, the deed should have been excluded. (Downing v. Mt. Washington, etc., 40 N. H. 233; 3 Zabr., N. J., 510.) Had the company possessed a general power to buy and sell lands, the rule might be otherwise, but there are no presumptions in favor of a corporation of limited powers.

The defendant's fifth instruction declares "that the question of whether the Pacific Railroad Company has the power, under its charter, to take and hold the lots sued for, cannot be inquired into in this suit, but can only arise in a proceeding instituted directly by the State for the purpose of ascertaining whether said company has or has not exceeded the powers granted in its charter." If this theory ever had any footing in this country, it was applicable only in those cases in which corporations were authorized by their charters to purchase real estate, but not to hold beyond a certain limited amount, and even then the doctrine has been applied only in those States where the English statutes of mortmain have been held to be in force. This distinction between the power to purchase and the power to hold was taken by the courts of Pennsylvania at an early day, and those early cases are often referred to, both by courts and counsel, in subsequent cases in other States, where the doctrine could have no possible application whatever; for upon examination of those cases (Leazure v. Hillegas, 7 Serg. & R. 313, and Baird v. Bank of Washington, 11

Serg. & R. 411) it will be found that they are decided expressly upon the point that the banks had the power to purchase but not to hold real estate, and that, such being the case, the property escheated to the State under the operation of the English statute of mortmain, which the courts declared to be in force in that State. The reason why it was held in these and similar cases that the grantee held an estate defeasible at the will of the State, is readily perceived when it is considered that when a grant was made to a corporation in violation of the statute of mortmain, the estate thereupon escheated to the crown or to the State by the express terms of the statute ; or in other words, the State became seized of the estate by operation of law. The State, then, being seized of the estate by force of the statute, was, as a matter of course, the only party who could properly institute proceedings for possession. The statute, not the deed, estopped the grantor in those cases. The theory of those cases can have no application to the case at bar, for two reasons : 1st, because the Pacific Railroad Company is prohibited both from purchasing and from holding real estate for purposes foreign to the objects specified in the seventh section of its charter ; 2d, because the statutes of mortmain have no application in this State and are not held to be in force here. (See 2 Kent, 282 ; Chambers v. City of St. Louis, 29 Mo. 575.)

The real point of difference between the case of Chambers v. The City of St. Louis and the case at bar is this : the city of St. Louis had, under its charter and the general law concerning corporations, the power to purchase and hold real estate without reference to quantity or location, and it was therefore capable of acquiring rights to be enforced ; whereas the Pacific Railroad Company has neither the power to purchase or hold, except for certain specific purposes, which are defined in its charter, and beyond those purposes it could acquire no rights to be enforced or title to be questioned. The same questions presented in the case of Chambers v. The City of St. Louis were also presented in Boyce v. The City of St. Louis, and in that case the court held that the city could not hold real estate for purposes foreign to the objects of its incorporation. (29 Barb. 650 ; The People v. Mau-

ran, 5 Den. 389; The Bank v. Poitiaux, 3 Ran., Va., 136; Baird v. Bank of Washington, 11 Serg. & R. 411; Silver Lake Bank v. North, 4 Johns. Ch. 370.) In each of these cases (and in all others cited by defendants in support of the theory of their fifth instruction) it will be noticed that the corporations had the power to purchase real estate. So in the case of Bogardus v. Trinity Church, 4 Sandf. Ch. 758, and in Barrow v. Nashville & Charlotte Turnpike Co., 9 Humph. 304, the proceedings were to set aside conveyances made to corporations, and the courts held that the corporations having the power to purchase, and having acquired complete titles at the time the conveyances were executed, they could not afterwards be set aside or avoided at the suit of a private individual.

The position which we take in this case is that the Pacific Railroad Company is a private corporation, and that it possessed no power to take or hold real estate for any purpose or to any amount beyond the limits prescribed by its charter, and that all deeds of land or lots to said company beyond the amounts authorized by its charter, or for purposes foreign to the objects of its creation, are utterly void, for the want of capacity in the corporation to take the title. In this position we believe we are sustained by all the books and authorities. "There can be no doubt that if a corporation be forbidden by its charter to purchase or take lands, a deed to it would be void, as its capacity may be determined from the instrument which gives it existence." A prohibition, reservation or exception in a charter must stand in full force, though it destroy or make nugatory all the powers given to the company. (Commonwealth v. Erie & N. E. R.R. Co., 27 Penn. 351; Ang. & Ames Corp., § 152.) The Pacific Railroad Company is prohibited by its charter from holding real estate beyond a certain amount. The language of the charter is (§ 7) "and for that purpose hold a strip of land not exceeding one hundred feet wide, except," etc. But even was the charter silent upon the question of holding real estate, then its mere silence would be as absolute a prohibition as positive words of restriction. (Blount v. Walker, 11 Wis. 457.) And we submit that if a deed to or a contract with a corporation is void for the want of capacity in the corporation

to take the title or make the contract, then it is not a question between the corporation and the State; but any party interested in the act may take advantage of any defect of power in the corporation to do such act. In further support of the position that all contracts made by corporations which are *ultra vires* are absolutely void, and that any party interested may take advantage of any defect in the power of the corporation to make such contracts, and that it is not a question between the corporation and the State, we refer to cases following : Penn. & Del. Canal Co. v. Dandridge, 8 Gill & J. 248 ; Hood v. N. Y. &. N. H. R.R. Co., 22 Conn. 502 ; Elmore v. Naugatuck R.R. Co., 23 Conn. 457; The Mutual Savings, etc., v. The M. A. Co., 24 Conn. 159 ; Naugatuck R.R. Co. v. The W. B. Co., *id*. 468 ; Bank of Mich. v Niles, 1 Doug., Mich., 401; Orr v. Tracy, 2 Doug. 254 ; Root v. Godard, 3 McLean, 102 ; Root v. Wallace, 4 McLean, 8 ; Dodge v. Woolsey, 18 How. 331 ; Pierce v. Mad. & Ind. R.R. Co., 21 How. 442 ; 3 Wend. 482, 573 ; 7 Wend. 31.

*Phillips & Vest*, for respondents.

I. The question whether the Pacific Railroad Company has the power, under its charter, to take and hold the real estate sued for, cannot be raised in this suit, but the same can only be tried in a proceeding by the State through its proper officers, instituted directly for the purpose of ascertaining whether said company has or has not exceeded the powers granted by its charter. This case is totally unlike that of The Pacific R.R. Co. v. Seeley *et al.*, 45 Mo. 212. In that case the Pacific Railroad Company brought suit against Seeley's heirs for the specific performance of an executory contract for the conveyance of real estate to the company, based upon the consideration that the company would locate a freight and passenger station on the land of said Seeley, and this court very properly decided that the contract could not be enforced. In the case at bar, while it may be admitted that the consideration was similar, the title has been conveyed to the trustee of the company, and then passed through several parties to the respondent. " A good defense to a bill for specific performance may be a very bad ground for a bill to set aside an executed contract; and when

a corporation, vested with power to take and hold real estate for specific purposes, purchased and took a conveyance of land, and afterwards used the land for other purposes than the charter permitted, the abuse of power was deemed to be no ground for setting aside the deed at the instance of the vendor." (Ang. & Ames Corp. 137, §§ 151–4.) In the case of Barrow v. The Nashville & Charlotte Turnpike Co., 9 Humph. 304, it was decided "that the want of power in a corporation to contract for and hold land, creates no equity in behalf of the vendor to rescind the contract. It is a matter of no concern to him whether the corporation exceeded its powers or not." Appellant claims under the sheriff's deed conveying to him the interest of Johnson, one of the grantors to the trustee of the Pacific Railroad Company, and the theory upon which he hopes to recover is that the company having no power under its charter to purchase and hold the land conveyed, the title never passed from the grantors until purchased by the appellant. Conceding that the Pacific Railroad Company exceeded its powers as to the land in suit, the question is, what became of the title? Did it remain in the grantors, or did the company take a defeasible estate subject to be divested by the State, upon office found, as in the case of aliens? That the latter position is correct, has been decided in all the States where the question has arisen. In the case of Chambers v. The City of St. Louis, 29 Mo. 567, this court declared that "if, in holding and purchasing real estate, the city of St. Louis passes the exact line of her power, it belongs to the government of the State to exact a forfeiture of her charter; and is not for the courts in a collateral way to determine the question of misuser by declaring void conveyances made in good faith." The same doctrine is enunciated in the following cases: Runyan v. Lessee of Coster, 14 Pet. 122; Baird v. Bank of Washington, 11 Serg. & R. 418; The Banks v. Poiteaux, 3 Randolph, 136; Leazure v. Hillegas, 7 Serg. & R. 319; Abb. Dig. Law of Corp. 339, § 12; Silver Lake Bank v. North, 4 Johns. Ch. 370; Burns v. Milwaukee & Miss. R.R. Co., 9 Wis. 457; Goundie v. Northampton Water Co., 7 Barr, 233. If the conveyance to the Pacific Railroad Company by Johnson and others was contrary to public policy,

yet after the execution of the deed, the grantors or those claiming under them cannot attack the title conveyed. The grantors are *in pari delicto* with the company, and the title will be left where it has been put by the act of the parties. There is no evidence in regard to when the debt was contracted by Johnson for which the land was sold, but the record shows that the judgment was obtained on the 21st of April, 1865, and the execution levied on the 16th of March, 1870, while the deed to the company was made on the 18th of December, 1858. In the time intervening between the conveyance and the levy and sale, a flourishing town has sprung into existence upon the land, and thousands of dollars have been expended in improvements by persons in no way connected with the original transfer. In such a case this court will not interfere. (Farmers' & Millers' Bank v. Detroit & Milwaukee R.R. Co., 17 Wis. 372; Bissell v. Michigan Southern R.R. Co., 22 N. Y. 258.)

II. It will be noticed by reference to the language of the acts creating and governing the Pacific Railroad Company (Sess. Acts 1849, p. 220, § 7; Sess. Acts 1851, p. 272, § 9) that there is no express prohibition upon the company as to the purchase of or taking lands. There can be no doubt that if a corporation be forbidden by its charter to purchase or take lands, a deed made to it would be void, as its capacity may be determined from the instrument which gave it existence. There is, however, a broad distinction between a prohibition to purchase or take, and a prohibition to hold; and when the act incorporating a bank made it capable " to have, hold, purchase, receive, possess, enjoy and retain lands, rents, tenements, goods, chattels and effects of whatever kind, nature or quality, to the amount of two millions of dollars and no more; provided, nevertheless, that such lands and tenements, which the said corporation are hereby enabled to purchase and hold, shall only extend to such lot and lots of ground, and convenient buildings and improvements thereon erected, or to be erected, which they may find necessary and proper for carrying on the business of said bank, and shall actually occupy for that purpose," it was decided by the Supreme Court of Pennsylvania that the bank might purchase, absolutely, lands in a distant

country which they did not occupy, though they, or the third person to whom they might convey, would hold them by a title defeasible by the commonwealth and the commonwealth alone, as is the case with the title of aliens.　In an action of ejectment the question of exceeding its powers by a corporation cannot be determined.　(Ang. & Ames Corp. 137, § 151–3; McIndoe v. St. Louis, 10 Mo. 576; Baird v. Bank of Washington, 11 Serg. & R. 418; Leazure v. Hillegas, 7 Serg. & R. 319; Goundie v. Northampton Water Co., 7 Barr, 239, 240.)

In the case of The People and Health Commissioner of New York v. Mauran *et al.*, 5 Den. 389, the Supreme Court of New York held "that every corporation may convey whatever they have taken, whether able to hold it or not.　The consequence is that the grantees of the company took the estate as they held it, absolute or defeasible as might be.　Corporations have a fee simple for the purposes of alienation, and a determinable fee for the sake of enjoyment."　(29 Verm. 93; 8 Dana, 129; 2 Kent's Com. 326–7.)　We have no disposition to controvert the settled rule that a corporation possesses only those properties which the charter expressly or incidentally confers upon it, nor do we assert that the Pacific Railroad Company had authority to become a real estate broker or speculator in town lots, but we do contend that the title to the lands in suit having been conveyed by deed to the company, even if in excess of its power to hold them, the company could then convey to third parties, and the title thus conveyed, although defeasible by the State, is good as to the remainder of the world.

III. That the restriction found in the charter of the Pacific Railroad Company, and similar restrictions in other charters, were intended by the Legislature to apply to the power of corporations in this State to hold lands, is evident from section 2, page 297, Wagner's Statutes.　Ample provision is there made for any railroad company's acquiring real estate in any quantity to aid in the construction, maintenance and accommodation of its railroad, and the enactment is in accordance with the statute of mortmain, which was held to apply to the holding real estate by corporations, not to the proceeds of the sale of real estate.　(2 Kent's Com. 229; Ang. & Ames Corp. 136.)

ADAMS, Judge, delivered the opinion of the court.

This was an action of ejectment. Both parties claimed under one James C. McKeehan, who was the patentee under the United States for the land on which the lot in controversy was situated.

The defendants claim title through the Pacific Railroad Company, or rather through Frederick L. Billon, trustee for the sole use and benefit of the Pacific Railroad Company. The deed to Billon embraced 151 town lots, distributed alternately throughout the town of Knob Noster, situated on the line of said railroad, and five and a half acres of depot grounds, and was executed to the said trustee in 1858, for the use of said company, for and in consideration of the sum of one dollar and the benefits which the grantor expected to obtain from the location of a passenger and freight station upon the land thereby conveyed ; and the deed also authorized a sale by the trustee of all such portions of the real estate thereby conveyed as should not be required for the purposes of said road, at such time and in such manner as the board of directors of said company should deem most conducive to the interest of said company.

The defendants claimed title under and through this conveyance to Billon, and have the oldest paper title, provided the deed to Billon as trustee is valid.

Numerous instructions were given and refused, raising the question as to the power of the Pacific Railroad Company to take, hold and dispose of the lands in question ; and the Circuit Court having decided these questions in favor of the defendants, the plaintiff has brought the case here by appeal.

The question as to the power of the Pacific Railroad Company to receive grants of land and to dispose of them depends upon the proper construction of its charter and the laws of this State referring thereto. By the first section of the charter, among other things, it is provided that it " may hold, use, possess and enjoy the fee simple or other title in and to any real estate, and may sell and dispose of the same." (See Laws of Mo. 1849, p. 219.) The seventh section of this act was amended in 1851 (Laws of 1851, p. 272, § 9), and provides that " said company

shall have power to locate and construct a railroad," etc., " and for that purpose may hold a strip of land not exceeding one hundred feet wide, except where it may be necessary for turn-outs, embankments or excavations, in which case they may hold a sufficient width for the preservation of their road, and may also hold sufficient land for the erection and maintenance of depots, landing places or wharves, engine-houses, machine shops, warehouses, and wood and water stations."

Section 20 of the act of 1849, above referred to, provides that " the operations of said company shall be confined to the general business of locating, constructing, managing, and using said railroad, and the acts necessary or proper to carry the same into complete and successful operation."

By section 57 of an act entitled " An act to authorize the formation of railroad associations and to regulate the same," approved December 13, 1855, it is provided that " all existing railroad corporations within this State, and such as now or may be hereafter chartered, shall respectively have and possess all the powers and privileges contained in this act, and they shall be subject to all the duties, liabilities and provisions not inconsistent with the provisions of their charter contained in this act."

Among the privileges referred to in this section are those contained in section 29 of the same act (R. C. 1855, p. 425), which provides that such company may " take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroad, but the real estate received by voluntary grant shall be held and used for the purpose of such grant only." It may also " purchase, hold and use all such real estate and other property as may be necessary for the construction and maintenance of its railroad, and the stations and other accommodations necessary to accomplish the object of its incorporation."

From these enactments it is evident to my mind, that it was the intention of the Legislature to invest the Pacific Railroad Company with power to take two classes of real estate; one class it had the right to receive and dispose of at pleasure, for the pur-

pose of aiding in the construction of its road, or for raising funds to pay debts contracted in its construction, etc. ; the other class it can hold only for depots, road-beds, etc. The history of the country shows that this is the proper construction of the acts referred to. From the time the charter was granted, donations of real estate to aid in its construction have been made all along the line of the road, and titles have been acquired and investments made on the faith of this being the proper construction of the charter. It is true that this company, like all other corporations, is subject to all the limitations expressed in the charter, but the charter and the laws above referred to expressly authorize grants of land to be made to aid in the construction of the road.

The State considered this railroad company able to receive the lands donated by Congress without any enlargement of its charter, and accordingly made the grant to aid in the construction of the main trunk line to the bifurcation of the Southwest branch, and from that point to apply the lands to the Southwest branch.

Although this railroad company may receive grants of land, and sell and dispose of the same for the purposes of its construction and payment of its debts, etc., it cannot become a large landed proprietor for purposes not connected with its creation. But the amount of lands it may receive cannot be decided between these parties ; conceding the power to receive lands for the purposes aforesaid, no one, except the State, can raise the question as to the amount that may be received. This was decided by this court in the case of Chambers v. The City of St. Louis, 29 Mo. 576–7 ; also by the Supreme Court of the United States in the case of Meyer v. Croft, reported in the May number of the Law Register for 1872 ; see also to the same effect, Smith v. Shely, decided by the Supreme Court of the United States at the December term, 1871.

Judge Scott, in Chambers v. The City of St. Louis, says, delivering the opinion of the court : "There being a right in the city to take and hold lands, if there is a capacity in the vendor to convey, so soon as the conveyance is made there is a complete sale ; and if the corporation, in purchasing, violates or abuses the power to do so, that is no concern of the vendor or his heirs. It is a matter between the State and the city."

So this question can arise only in a direct proceeding by the State against the Pacific Railroad Company, and not in a collateral proceeding like this. The case of The Pacific R.R. Co. v. Seeley's Heirs, 45 Mo. 212, was a suit in equity for the specific conveyance of lands, and not an executed conveyance. That case went off on the ground that the contract in question upon its face showed that it was against public policy. The petition was demurred to and the demurrer was sustained by the Circuit Court, and this judgment of the Circuit Court was properly affirmed by this court, on the ground that the contract was void as being against public policy.

There is a manifest distinction between executory and executed contracts. While a party may not be compelled by a court of equity to carry a contract into specific execution, yet if he should voluntarily make a deed, it will be good to pass all his title.

The case of The State v. Commissioners of Mansfield, 3 Zabr., N. J., 510, so strongly relied on by the counsel for appellants, is not in conflict with any of the doctrines here laid down. In that case the Camden & Amboy Railroad and Transportation Company claimed that certain real estate consisting of houses and lots owned by that company and let by them to their workmen and employees, were exempt from taxation under a clause in their charter exempting the company "from all further taxation." The court held that this property was liable to taxation, while the road-bed, turnouts, etc., were exempt, thereby holding that there were two classes of real estate which the company had the power to acquire and hold, the one being liable to taxation and the other exempt. The same doctrine was maintained in Massachusetts in the case of The Inhabitants of Worcester v. The Wilson R.R. Corporation, 4 Metc. 564, which is looked upon as a well-considered case. (See also Whitehead v. Vineyard, *ante*, p. 30.)

Under the view we take of this case the judgment must be affirmed. The other judges concur.