Bowman Dairy Co. v. Mooney.

---

BOWMAN DAIRY COMPANY, Appellant, v. JOHN T. MOONEY, Respondent.

St. Louis Court of Appeals, October 28, 1890.

1. **Corporations:** EXTENT OF POWERS. A manufacturing or business corporation, organized under the laws of this state, has no authority to engage in a business not within the scope of its purposes, as set forth in its articles of incorporation. And *held* that

. such a corporation had no power to engage in selling oysters under a charter "to buy and sell dairy products, especially milk, butter, cheese and ice cream, and to purchase, hold, mortgage or otherwise convey such real and personal property, as the purposes of the corporation shall require."

2.  ———— : ULTRA VIRES, DEFENSE OF. A person with whom a corporation has entered into a contract may plead, in defense to an action thereon, that the contract is *ultra vires*, as long as the contract has not been fully performed by the corporation. And *held* that the contract in the case at bar, which was a contract for the hiring of the defendant by the plaintiff corporation, had not been thus fully performed by the corporation, since the period of service contracted for had not expired at the time of the breach of the contract by the defendant.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*R. T. Stillwell* and *L. A. Steber*, for appellant.

(1)  Plaintiff was incorporated as a business corporation under the laws of Missouri and possesses all the powers granted by such laws. R. S. 1889, secs. 2508, 2768, 2770 and 2771. (2) Even if the plaintiff has exceeded its powers, by purchasing Berry & Owens' oyster business, trade and good will, and going into the business of buying and selling oysters, defendant (appellee) is in no position to complain. The state alone by a direct proceeding can interfere in such a case, for an abuse of corporate power or excess of authority assumed by plaintiff. *Hovelman v. Railroad*, 79 Mo. 632; *Broadwell v. Merrit*, 87 Mo. 95, 101; *Ragan v. McElroy*, 98 Mo. 349, 352; *Bank v. Matthews*, 98 U. S. 621, 628. If the state chooses to tolerate irregularities, it is not for individuals to question these acts, certainly not for individuals who make contracts with them. *Hotel Co. v. Hunt*, 57 Mo. 126, 129. Defendant should not be permitted to repudiate his contract on a defense

of *ultra vires.* *Bank v. Matthews,* 98 U. S. 621; *Railroad v. McCarthy,* 96 U. S. 258; *Daniels v. Tearney,* 102 U. S. 415; *Board v. Railroad,* 47 Ind. 407; *Arms Co. v. Barlow,* 63 N. Y. 62; *DeGroff v. Thread Co.,* 21 N. Y. 124; *Woolen Co. v. Lamb,* 143 Mass. 420; Morawetz on Priv. Corp., secs. 100, 693; Sedgw. Stat. and Const. Law, p. 73; 2 Herman on Estoppel, pp. 1318–19; Bishop on Con. [ Ed. 1887 ] secs. 280 to 311. Especially after enjoying the advantages of the employment, and after having induced the plaintiff to embark in the business. See, in addition to above authorities, 2 Herman on Estoppel, sec. 1221; *Stilwell v. Aaron,* 69 Mo. 539, 545; *Given v. Corse,* 20 Mo. App. 132.

*A. R. Taylor,* for respondent.

BIGGS, J.—The Bowman Dairy Company is a Missouri corporation, and it is authorized to carry on a dairy business in the city of St. Louis. The present action is one in equity, and was instituted by the Bowman Dairy Company, as plaintiff, to restrain the defendant from violating a certain contract alleged to have been entered into by the plaintiff and the defendant. There was a temporary injunction, which was dissolved upon a final hearing, when the plaintiff's action was dismissed. From this judgment the plaintiff has prosecuted an appeal.

In the petition the defendant was charged with the violation of the following written contract: "This agreement made this twelfth day of September, 1889, between the Bowman Dairy Company, of the first part, and ——, of the second part, both of the city of St. Louis and state of Missouri, witnesseth: That the said Bowman Dairy Company does hereby employ the said J. T. Mooney as driver of an oyster wagon, and agrees to pay him eighteen dollars per week. Said J. T. Mooney, in consideration of the above

sum of eighteen dollars per week, during his employment by the said Bowman Dairy Company, hereby agrees to drive such oyster wagon, and perform such other duties as may be assigned to him by said Bowman Dairy Company, its officers or agents ; to use all diligence in his power to make and keep trade for the Bowman Dairy Company ; and at no time whilst in their employ, or within two years after leaving their service, to sell oysters for himself or any other person or company to the customers of first part, or interfere with or enter into competition with their business, or in any way, directly or indirectly, divert, take away, or attempt to divert or take away, any of their custom or patronage. This contract as to the term of service may be terminated by either party giving thirty days' notice.

"( Signed.)     JOHN T. MOONEY,
                "BOWMAN DAIRY CO.,
"By J. R. BOWMAN,
          "Secretary."

The execution of the contract was admitted. The plaintiff's evidence tended to prove that the defendant entered upon the discharge of his duties under this contract of employment, and that he worked two days, earned six dollars, collected two dollars from the company, and then quit work without any cause or excuse. The evidence also tended to show that the defendant soon thereafter commenced to sell oysters on his own account to plaintiff's customers. To prevent the continuation of this the present proceeding was begun.

In defense of the action, and on a hearing of a motion to dissolve the temporary injunction, the defendant introduced the plaintiff's articles of association, which showed that the plaintiff was incorporated under article 8, chapter 42, of the Revised Statutes of 1889, entitled "Manufacturing and business companies ; " that the name adopted by the plaintiff was the

"Bowman Dairy Company;" that the purposes of the corporation were: *First.* "To buy and sell dairy products, especially milk, butter, cheese and ice cream." *Second.* "To purchase, hold, mortgage or otherwise convey such real estate and personal property, as the purposes of the corporation shall require."

The plaintiff introduced additional evidence, which had a tendency to show the following state of facts: That on the twelfth day of September, 1889, the plaintiff purchased the stock in trade of the firm of Berry & Owens, which firm had been engaged for some years in the wholesale and retail oyster business in the city of St. Louis; that said firm had built up a large and lucrative trade; that the plaintiff, in making such purchase, also bought the good will of the firm; that for several years the defendant had been in the employ of Berry & Owens, as the driver of one of their oyster wagons in a certain district in the city; that, by reason of such employment, the defendant had become well acquainted with the customers of the firm along his routes; that, before making the purchase from Berry & Owens, the plaintiff made the foregoing contract with the defendant; that they would not have made said purchase, had it not been for the contract with the defendant, and that this was known to the defendant at the time he entered into the agreement.

The doctrine of *ultra vires* was invoked by the defendant as a defense to the action. The defendant denied the plaintiff's right to the aid of a court of equity in the enforcement of the contract against him for the reason, that the plaintiff's charter confined its business to the sale of milk, butter, cheese, etc.; that it was, therefore, prohibited by law from engaging in the oyster business; and that, as the contract pertained to the latter business, it was *ultra vires* of the corporation, and, as the contract was yet *in fieri*, its enforcement would violate a rule of public policy. On the other

hand the plaintiff insisted that the law, under which it was incorporated, did not confine its business to dealings in dairy products, but that it was, authorized to engage in any business "intended for pecuniary profit or gain, not otherwise especially provided for, and not inconsistent with the constitution and laws of this state." R. S. 1889, sec. 2771. The argument is, therefore, made that the proviso found in the general statute in relation to corporations ( Revised Statutes, 1889, sec. 2508 ), to the effect that no corporation shall engage in business other than that expressly authorized by its charter, or the law under which it was organized, can in no way invalidate the plaintiff's action in the purchase of the oyster business, for the reason that such business is lawful, that it is not otherwise especially provided for, and that, as it is a business of pecuniary gain or profit, its exercise was within the powers conferred upon the plaintiff by the statute under which it was incorporated. It is further insisted that, if it be conceded that the purchase of the oyster business by the plaintiff was outside its corporate powers, yet the judgment of the court is wrong, because the evidence showed that the contract had been fully performed by the plaintiff, that the defendant had received and accepted its gains and advantages, and that consequently a court of equity should decree its enforcement. The plaintiff urges two additional arguments against the finding of the circuit court: *First.* That the defendant ought not to be heard in such a defense, for the reason that the plaintiff, on account of his contract, was induced to change its position, whereby great loss will be caused to the plaintiff, if the defendant is allowed to prevail in this action ; in other words, that the defendant ought to be estopped by his contract. *Second.* That, if the plaintiff has violated its charter, the state alone can take advantage of it in a direct proceeding to declare a forfeiture. The foregoing is the

statement, as we understand them, of the theories of the respective parties concerning the law applicable to this case.

I.　It is a well-established principle that all corporate acts, not expressly granted to a corporation by legislative enactments, are prohibited by the common law ; therefore, when a corporation derives its authority either from a special act of the legislature, or by virtue of a general law, to prosecute a particular business, in a particular way, it is as much incapacitated from engaging in another business as if it had not been incorporated at all.　Any business prosecuted by a corporation must be expressly authorized by its charter, or must in some way be necessary to the successful prosecution of the business mentioned.　*Ashbury, etc., Railway Co. v. Riche,* 44 L. J. Exch. 185 ; *Oregon Railway and Navigation Co. v. Railroad,* 130 U. S. 1.　This is elementary law. The plaintiff's articles of association expressly authorize it to engage in buying and selling dairy products, especially milk, butter, cheese and ice cream, and to purchase and hold such real and personal property as the purposes of its business may require.　It must be conceded that the oyster business cannot by any possible construction be held to be in aid of, or necessary to, the successful prosecution of the dairy business.　This is admitted by the plaintiff, but the argument is made that the plaintiff's articles of association and the law under which it was incorporated must be read together for the purpose of determining the corporate powers expressly conferred upon the plaintiff.

The plaintiff relies on section 2771 of the statute. This section, after mentioning various purposes for which companies may be organized, contained the following clause :　"*Eleventh,* for any other purpose intended for pecuniary profit or gain, not otherwise especially provided for, and not inconsistent with the constitution and the laws of this state."　Under this

last clause it is supposed that the plaintiff has authority to carry on any business for pecuniary profit, not otherwise especially provided for. This is the idea which we gather from the plaintiff's argument and brief. Such a construction is out of harmony with the other sections of the law. Section 2768 provides that each association must be incorporated under a name or title designating the business in which the proposed corporation is about to embark. This section also provides that the purposes, that is, the business of the association or company, must be stated in its articles of association. Now, if the plaintiff's idea is to prevail, how could a name be selected which would designate or indicate the business of a corporation? The plaintiff's corporate name very clearly indicates that it is engaged in buying and selling dairy products, such as milk, butter, cheese, etc., but this name would be no indication that it had authority to engage in the oyster business. Would it be a sufficient compliance with the other requirement of the section to state that the plaintiff intended to embark in *some* business for pecuniary gain, not otherwise especially provided for by the corporation law of the state? We think not. It was clearly intended that the *particular business* intended to be followed must be stated in the articles of association of each company. The meaning of section 2771 is, that all business companies, as contradistinguished from religious or benevolent societies, except railroad companies, insurance companies, banks, etc., the incorporation of which is especially provided for by other statutes, shall be incorporated under article 8, chapter 42, of the statutes. For this reason, the eleventh clause of section 2771, which is general and sweeping in its terms, was added, in order to authorize the incorporation of any business company whose proposed business was not unlawful within itself, nor prohibited by law. Our conclusion is that the plaintiff had no right to engage in the oyster business,

and that the contract with the defendant in reference thereto was *ultra vires* of the corporation.

II. The next proposition is that, although the contract was void for want of power on plaintiff's part to execute it, nevertheless, since it has been fully executed by the plaintiff, a court of equity will decree its enforcement. This rule is stated by Mr. Morawetz in his work on corporations, section 689, as follows: "After a contract entered into by a corporation has been performed by either of the contracting parties, the fact that the making of the contract involved an unauthorized exercise of corporate power on the part of the company will not constitute a defense to an action brought by the party having performed the contract to recover compensation for a breach by the other party." The principle involved in this rule has been the subject of much judicial discussion, which has resulted in some confusion in the authorities. We think that a great deal of this confusion has arisen from a misconception of the true principle upon which the rule is predicated. So long as such a contract is executory, that is, when it has not been fully performed by either party, the courts will not sustain any kind of action based upon it. The reason is that the enforcement of such a contract would be against public policy, and in direct violation of law. As was said by Judge MILLER in *Case v. Kelly*, 133 U. S. 28: "While a court might hesitate to declare the title to lands already received, and in the possession and ownership of the company, void on the principle that they had no authority to take such lands, it is very clear that it will not make itself the *active agent in behalf of the company in violating the law and enabling the company to do that which the law forbids.* See, also, *Thomas v. Railroad*, 101 U. S. 71, 86. Some authorities proceed on the idea that the rule is in some way founded on the law governing estoppels. Reasoning from this premise, it has been stated in a general

way that the defense of *ultra vires* should not prevail, when its enforcement would be inequitable, thereby losing sight of the true principle upon which the whole doctrine rests. It is from this standpoint that the plaintiff's counsel make the argument, that the contract must be considered as fully performed by the plaintiff, or that the defendant should be estopped to set up the defense of *ultra vires*. Mr. Morawetz (2 Mor. Corp. 692) says: "The rule is not based upon the doctrine of estoppel, as has sometimes been suggested. An estoppel *in pais* involves a representation of a fact upon the faith of which an *innocent party* has been induced to alter his position. The rule referred to, however, applies where both parties to the contract have notice that it was in excess of the charter powers of the corporation, and, therefore, prohibited by law. * * * Moreover, the doctrine of estoppel cannot be invoked by an individual so as to defeat the operation of a rule of law established for the benefit of the community in general. The legal prohibition against the unauthorized exercise of corporate powers is established for the benefit of the public, on general grounds of expediency, and not for the benefit of corporations, or of persons dealing with them. The effect of the prohibition upon a contract, therefore, depends wholly upon the requirements of the public policy pursuant to which the prohibition was established." If we apply the principle announced, the contract in the case at bar will not be enforced in any way against the defendant merely because it would work an injustice to the plaintiff to allow the defendant to recede from it. In order to defeat the defendant it must appear that plaintiff has fully performed the contract. If such be the case, then the infraction of the law has already taken place, which would eliminate all questions of public policy from the case, and allow the courts to deal with the contract on equitable principles. Under this view the question at the threshold is, did the defendant have the right to recede

from the contract at the time he quit work ?   Or, to put
it in another way, was the contract at that time fully per-
formed by the plaintiff ? ·If the answer to this proposition
is against the plaintiff, the facts and circumstances, under
which the contract was entered into, and the effect of its
violation by the defendant, become immaterial inquiries.

Did the defendant have the right to recede from the
contract ?   When an individual is sued upon a contract
by a corporation, he is permitted to make the defense
of *ultra vires* upon the theory that, at the time of its
violation by him, there was no legal obligation on the
part of the corporation to comply with its part of the
contract.    In other words there is a want of mutuality
in the contract.   *Whitney Arms Co. v. Barlow*, 63 N. Y.
62.   When such a contract has been fully performed
by· the corporation,  the mutuality of the obligation
becomes an immaterial question for the reason, that the
defendant can have no occasion to seek its enforcement.
It is upon this idea, together with other reasons hereto-
fore mentioned by us, that courts make a distinction
between executory and executed contracts, when deal-
ing with the question of *ultra vires*.   Applying what
we have said to the contract in issue, it becomes quite
apparent that the defendant was at liberty to repudiate
it at the time he quit work.   At that time the contract
was *in fieri*, and the plaintiff had the undoubted right
to discharge the defendant from its employment, and in
such an event he would have been without a remedy.
This conclusively shows that there was no mutuality of
obligation existing, and it is decisive of the point in
favor of the defendant.    This result cannot be avoided
by the argument that the consideration for the latter
portion of the defendant's undertaking had passed to
him.   It would not comport with our ideas of the law
to say to the defendant that, although he had no rights
under the contract, nevertheless a court of equity would
compel him to quit selling oysters on his own account
by reason of the contract.

Our treatment of the questions is, we think, not only in accord with the decisions of our own courts, but also in harmony with the weight of authority in other jurisdictions. *St. Louis Drug Co. v. Robinson*, 81 Mo. 19 ; *Land v. Coffman*, 50 Mo. 243 ; *St. Louis Mfg. Co. v. Hilbert*, 24 Mo. App. 343 ; *St. Louis Stoneware Co. v. Partridge*, 8 Mo. App. 220 ; *Bradley v. Ballard*, 55 Ill. 417 ; *Whitney Arms Co. v. Barlow*, 63 N. Y. 62 ; *Chambers v. City of St. Louis*, 29 Mo. 543 ; *Hovelman v. Railroad*, 79 Mo. 632 ; *Broadwell v. Merritt*, 87 Mo. 101 ; *Union National Bank v. Hunt*, 7 Mo. App. 45 ; *Shewalter v. Pirner*, 55 Mo. 218 ; *Pacific Railway Co. v. Seely*, 45 Mo. 212 ; *Dartsmouth College v. Woodward*, 4 Wheat. 518 ; *Gilliam v. Brown*, 43 Miss. 641 ; *Russell v. Wheeler*, 17 Mass. 281.

What we have said disposes of the objection that the defendant cannot avail himself of the plea of *ultra vires*. When the action is based on a contract, which is shown to be beyond the powers of the corporation, and which remains executory, we have found no case, which goes to the extent of holding that the individual cannot allege the illegality of the contract in opposition to its enforcement. The line of authorities, relied on by the plaintiff, and which hold that the question of *ultra vires* can only be raised in a direct proceeding by the state, refers only to cases where the business, in which the corporation is engaged, is not expressly nor by fair implication prohibited by the terms of the charter. *St. Louis Drug Co. v. Robinson*, 81 Mo. 18, and authorities cited. This rule is generally invoked in cases where the corporation is charged with the excessive exercise of powers conferred. *McIndoe v. St. Louis*, 10 Mo. 575 ; *Chambers v. St. Louis*, 29 Mo. 543 ; *Land v. Coffman*, 50 Mo. 243.

Our conclusion necessarily leads to an affirmance of the judgment. With the concurrence of the other judges, it will be so ordered. All the judges concur.