## PRAIRIE SLOUGH FISHING & HUNTING CLUB v. WILLIAM P. and LENA KESSLER, Appellants.

**Division Two, October 14, 1913.**

1. **CORPORATIONS: Powers: Express and Implied.** When the organic or statutory law specifies the powers a corporation may exercise, or the property it may hold, such specification excludes by implication all other powers or rights, except such incidental or subordinate rights and powers as may be necessary to an exercise of the powers and rights expressly given.

2. ——————: ——————: ——————: **Fishing and Hunting Club: Title to Real Estate.** A fishing and hunting club incorporated under Art. 11, Chap. 12, R. S. 1899 (now Art. 10, Chap. 33, R. S. 1909), authorizing incorporation for benevolent, religious, scientific or educational purposes only, has not the power to hold 426 acres of land, fit partly for agriculture and partly for hunting and fishing. And the fact that the club's articles of agreement enumerated purposes other than benevolent, religious, scientific or educational could not operate to give the corporation power to acquire real estate for such additional purposes. [Sec. 1406, R. S. 1899, in so far as it enlarges upon the purposes designated by article 11, supra, has been declared unconstitutional and was omitted from the revision of 1909.]

3. ——————: **Ultra Vires: Attempt to Perfect Title to Land: Not Aided in Equity: Defense Available by Party.** Where the trial court has divested the legal title to real estate out of the defendants and vested it in the corporation plaintiff, on the theory that defendants held as trustees under a constructive trust for the plaintiff, and it appears upon appeal that for the plaintiff to hold such land would be a transgression of its corporate powers, it is *held*, that the case must be reversed and remanded. Equity will not lend its aid to cause a conveyance to a corporation of that which, under its charter, it is not permitted to hold and such defense is available to an interested individual (as here) as well as to the State.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett*, Judge.

REVERSED AND REMANDED.

*R. L. Sutton* and *John B. Dempsey* for appellants.

(1) Under the statute the plaintiff is empowered to acquire and hold such real estate and buildings only as may be necessary for assembly, library, laboratory and other rooms requisite for its purposes. Sec. 3443, R. S. 1909; Sec. 1405, R. S. 1899; Sec. 2833, R. S. 1889; Sec. 982, R. S. 1879. The enumeration of the kind and quantity of property which a corporation created under this statute may acquire, by all constructions of statutes, is an exclusion of the right to hold any other or for any other purpose. State ex rel. v. Trust Co., 144 Mo. 562; Railroad v. Clark, 53 Mo. 214; Carroll v. Campbell, 108 Mo. 559; St. Louis v. Russell, 9 Mo. 507; Kugglis v. Collin, 43 Mo. 353; State ex rel. v. Murphy, 130 Mo. 10; Bank v. Young, 37 Mo. 398; Doty v. Tel. & Tel. Co., 123 Tenn. 329. The incorporation of associations under the provisions of Art. 11, Chap. 12, R. S. 1899 (Art. 10, Chap. 33, R. S. 1909) is not authorized except for benevolent, religious, scientific or educational purposes, and the right of such associations to acquire and hold large bodies of farm lands is not granted either by express words or by implication, but on the contrary such right is clearly excluded. Sec. 21, art. 10, Constitution; Secs. 3432, 3435, 3439, 3443, R. S. 1909; State ex rel. v. Lesueur, 99 Mo. 558; 5 Thomp. Private Corp., sec. 5772; Railroad v. Seely, 45 Mo. 212; Goodland v. Bank, 93 Mo. App. 195; St. Louis v. Railroad, 13 Mo. App. 530; Carondelet v. Pecot, 38 Mo. 128; St. Joseph v. Saville, 39 Mo. 460; Ruggles v. Collier, 43 Mo. 375; Dorton v. Hearn, 46 Mo. 301; Sec. 1406, R. S. 1899 (Sec. 2834, R. S. 1889), authorizing the incorporation of societies for the promotion of boating, field sports, and other rational amusements, was held unconstitutional and void, and was omitted from the revision of 1909. State ex rel. v. Lesueur, 99 Mo. 558. It seems to be well settled in this State that a corpo-

ration created for one purpose or with authority to do a particular thing cannot go further than the purpose and power expressed in its charter or necessary to carry out such purpose and authority. Blair v. Ins. Co., 10 Mo. 559; Hoogland v. Railroad, 39 Mo. 451; Railroad v. Seely, 45 Mo. 212; St. Louis v. Gaslight Co., 70 Mo. 69; Carondelet v. Pecot, 38 Mo. 128; Ruggles v. Collier, 43 Mo. 375; Dorton v. Hearn, 67 Mo. 302; St. Joseph v. Saville, 39 Mo. 466; Ferry Co. v. Railroad, 128 Mo. 247; St. Louis v. Gas Light Co., 5 Mo. App. 530; Railroad v. Dameron, 4 Mo. App. 418; St. Louis v. Railroad, 13 Mo. App. 530; Goodland v. Bank, 74 Mo. App. 369; Chenowith v. Express Co., 93 Mo. App. 195.; Police Assn. v. Teerney, 116 Mo. App. 460; 5 Thompson on Private Corporation, sec. 5772. The defense of *ultra vires* may be made by a private individual in case of this character. It is only in case of executed contract that such defense is not permissible. Land v. Coffman, 50 Mo. 243; Dairy Co. v. Mooney, 41 Mo. App. 673; Garrett v. Mining Co., 113 Mo. 339; Chenowith v. Express Co., 93 Mo. App. 195; 5 Thompson on Private Corporations, sec. 5800; 10 Cyc. 1135; Case v. Kelley, 133 U. S. 21.

*R. H. Norton* and *Charles W. Bates* for respondent.

(1) The club was properly incorporated for the purposes specified in its charter. Constitution, art. 10, sec. 21; R. S. 1909, sec. 3435; R. S. 1899, sec. 1397; State ex rel. v. Lesueur, 99 Mo. 552. (2) The club had lawful authority and power to acquire and hold the land for its corporate purposes. Constitution, art. 12, sec. 7; R. S. 1909, sec. 3443; R. S. 1909, sec. 2990, par. 4; Club v. Finley, 53 Mo. App. 256. (3) Appellant will not be heard to question the right of the respondent, under its charter, to hold lands. "This question can be raised by the State alone." Hall v. Bank. 145 Mo. 418; Summet v. Brokerage, 208 Mo.

501; Bank v. Mathews, 98 U. S. 621; Bank v. Poiteaux, 3 Rand. (Va.) 136; Martindale v. Railroad, 60 Mo. 580; Kinealy v. Railroad, 69 Mo. 658; Hovelman v. Railroad, 79 Mo. 632; State v. Trust Co., 157 Mo. App. 557; Benevolent Society v. Murray, 145 Mo. 622; Drug Co. v. Robinson, 81 Mo. 18.   Appellant is estopped to deny the legal authority of the respondent to hold the lands in question. ˙ Vette v. Geist, 155 Mo. 27.

WILLIAMS, C.—In this suit plaintiff, proceeding on the theory of a constructive trust, seeks to have a court of equity declare a trust in favor of plaintiff with reference to approximately 426 acres of land situated in Lincoln county, Missouri, and by its decree to divest the title thereto out of defendants (the holders of the legal title), and vest the same in the plaintiff corporation, upon plaintiff's reimbursement to defendants of the amount paid by them for said land, and to compel defendants to account to plaintiff for the crops and rents received from said land.

The plaintiff is a corporation organized under the provisions of article 11, chapter 12, Revised Statutes 1899 (article 10, chapter 33, Revised Statutes 1909), by *pro forma* decree of the circuit court of the city of St. Louis, on December 4, 1900.   A short time after the corporation was organized it acquired a ten-year lease on the land in controversy, whereby the company and its members were given the absolute and exclusive right and privilege to hunt and fish upon said land, and the right to erect a clubhouse, outbuildings and fences upon a two-acre portion thereof.   At this time the land in controversy was owned by Fred Naxera and Edward H. Knight.   The clubhouse was erected and the land leased was enjoyed by the corporation members as a place to hunt and fish.   In 1906 defendant William P. Kessler was elected president of the plaintiff corporation, and served as such president until the latter part of 1908.   During the time he was

president of the club there was considerable discussion of the club's future among the members thereof, and of the propriety of procuring a renewal of the lease or purchasing the land outright. No formal action with reference to the matter was taken at any of the meetings of the board of directors, but some of the members testified that they discussed the matter with the president, William P. Kessler, and that he assured them he would look after the matter for the club and would try to get an option on the land for the club with a view to its purchase by the corporation. Later the said defendant procured an option from the landowners, taking the option in his own name, and informed some of the members of the corporation that he had procured an option for the ''club.'' In October, 1907, defendant closed the deal for the purchase of the land, and had the owners of the land convey the same to himself and wife, his codefendant herein. The purchase price was $6500, defendants paying $500 in cash, and executing their note, secured by deed of trust on the land, for $6000, due ten years after date, also separate notes for interest at eight per cent on said sum.

The testimony on the part of the plaintiff is that its members were not aware of this transaction until some time in July, 1908, when, at a meeting of the members of the corporation, Kessler submitted a proposition to the club, through its secretary, to the effect that he would sell the land to the club at a certain stipulated price, but that he would not renew the lease. A committee was appointed by plaintiff to investigate the matter, and upon investigation it was learned that the price asked was approximately six dollars an acre in excess of that paid by defendant for the property. A short time thereafter this suit was instituted, resulting in a decree for plaintiff as prayed.

Further facts necessary to a fuller understanding of the case are set forth in the interlocutory decree of

the circuit court, which decree, omitting formal parts, is as follows:

"Now at this day, at the March adjourned term of the circuit court of Lincoln county, Missouri, come again the parties to this suit, both plaintiff and defendants, by themselves and by their respective counsel, and all and singular the matters and things heretofore submitted to the court and taken under advisement, having been seen, heard and considered, the court doth find that the plaintiff, the Prairie Slough Fishing and Hunting Club, is a corporation organized under and by virtue of the provisions of article 11, chapter 12, Revised Statutes of Missouri, 1899; that the defendants, William P. Kessler and Lena Kessler, are husband and wife; that on the 1st day of August, 1900, a certain lease was executed by Fred Naxera and Edward H. Knight, and their respective wives, to one Adolph Vogler; that said lease covered the lands mentioned in plaintiff's petition, and described as follows: [Here follows description of said real estate.] That said lease ran for a term of ten years, and until the 31st day of July, 1910, and that the yearly rental as fixed in said lease was the sum of fifty dollars per year. It is further found by the court that under and by virtue of the terms of said lease it was provided that a frame building for residence and clubhouse purposes, outbuildings and fences, should be erected on said premises by the lessee thereof, to cost at least one thousand dollars. That shortly after the execution of said lease said Vogler transferred and assigned all his right, title and interest in said lease to the plaintiff, the Prairie Slough Fishing and Hunting Club, and that said Vogler, when he secured said lease from said Knight and Naxera, was acting for and on behalf of the plaintiff in securing said lease, and the same was taken for and on behalf of said club by said Vogler. The court further finds that the terms of said lease have in all respects been complied with by the plain-

tiff, and that the improvements have been erected by the plaintiff as provided for in the terms of said lease. The court further finds that the defendant, Wm. P. Kessler, on the . . . day of . . . , 1906, was a member of the board of directors of said Prairie Slough Fishing and Hunting Club, and at said time was duly elected the president of said club, and was re-elected for the year 1907, and that he assumed the duties of said office as president, and occupied the said position during the years 1906 and 1907, and at all times mentioned in plaintiff's bill. The court further finds that said plaintiff, through its members, and that various members of such corporation, for themselves as such members and for said club, as early as the fall of 1906, and at frequent times in the year 1907, informed said Kessler, while president of said club, that it was desirable on the part of plaintiff and its members to acquire the property mentioned and described in said lease and on which the said corporation had erected its clubhouse and other substantial improvements, costing more than the sum of one thousand dollars, and to purchase the same. That said Kessler, while acting as president, agreed with said members and promised them that he would purchase said property for the use and benefit of said club. That said defendant Wm. P. Kessler, while acting as president of said club, negotiated for the purchase of said property from Knight and Naxera the owners thereof, and that on the . . . day of . . ., 1907, he procured the said Knight and Naxera, owners of said land, to execute to him and his wife, his co-defendant, Lena Kessler, a warranty deed for all of said lands, at and for the price and sum of sixty-five hundred dollars. The court finds that the entire negotiations concerning the purchase of said lands were conducted by said Wm. P. Kessler alone; that said negotiations and the transfer of said property were kept secret from plaintiff and from the members of said organization, and that said Lena Kessler,

wife of Wm. P. Kessler, contributed nothing toward
the purchase of said property, but all moneys that
were paid were paid out of the funds of Wm. P. Kess-
ler alone. The court further finds that Wm. P. Kess-
ler paid to said Knight and Naxera the sum of five
hundred dollars in cash, and executed a note for the
sum of six thousand dollars, dated October 18, 1907,
payable in ten years after date, with interest thereon
from its maturity at the rate of eight per cent  per
annum, and also twenty semiannual interest notes, each
for the sum of one hundred eighty dollars, the first ma-
turing in six months after date, and the last maturing
in one hundred twenty months after date, and that
said defendants Wm. P. Kessler and Lena Kessler ex-
ecuted their deed of trust on said lands to said Naxera
and Knight to secure the payment of said notes. That
under and by virtue of the terms of said deed of trust
the defendants were permitted to pay sums of $300 or
multiple of said amount at any interest-paying period,
that is, at the end of any six months, and to discharge
the indebtedness, including the interest, to that extent.
That said notes for six thousand dollars and said five
hundred dollars cash constituted the whole and entire
consideration for the purchase price of said lands, and
that said five hundred dollars in cash and the execu-
tion of said principal note, with interest notes, consti-
tuted the entire consideration, and was all that was
paid or given by said defendants for said lands. That
since the execution of said deed, the defendant, Wm. P.
Kessler, has paid and discharged two of said interest
notes, amounting to the sum of one hundred eighty dol-
lars each, and that he has expended in repairing the
buildings and in making improvements on said lands
the sum of two hundred seventy-six and 65-100 dollars;
that the plaintiffs have paid one installment of rent
amounting to the sum of fifty-six dollars, and that
same was received and appropriated by said defend-
ant, Wm. P. Kessler, and that said defendants, Kess-

ler and wife, claim said property as their own by virtue of said purchase. All things considered, it is found by the court that the defendant, Wm. P. Kessler, occupying the fiduciary relation of president of said Prairie Slough Fishing and Hunting Club, in acquiring the title to said property for himself and his wife, was not acting in good faith, but in fraud to said club and its members, and that in equity and good conscience it should be decreed that he and his codefendant, Lena Kessler, held the said property in trust for the plaintiff.

"It is therefore ordered, adjudged and decreed that the title to said property be divested from the defendants, Wm. P. Kessler and Lena Kessler, and vested in the plaintiff, the Prairie Slough Fishing and Hunting Club, on condition, however, that the said plaintiff, the Prairie Slough Fishing and Hunting Club, on or before the 18th day of October, 1909, reimburse said Wm. P. Kessler and repay to him the sum of five hundred dollars, paid by said Kessler on the purchase price of said lands, and repay to him the sum of two hundred seventy-six and 65-100 dollars, the amount expended by him in improvements on said lands, and also repay to him the sum of three hundred sixty dollars paid by said Kessler on said interest notes, less, however, the sum of fifty-six dollars received by said Kessler as rent on said property under the terms of said lease. It is further ordered by the court that all unpaid rents accruing during the year 1909 and subsequent shall belong to the plaintiff. It is therefore ordered, adjudged and decreed by the court that the plaintiff, the Prairie Slough Fishing and Hunting Club, take up so as to release therefrom the defendants, Wm. P. Kessler and Lena Kessler, the said six thousand dollar note and the said interest notes executed by Kessler and wife to Naxera and Knight, so as to relieve and release said Wm. P. Kessler and Lena Kessler from all liability thereon, and

that on compliance with said order by said plaintiff that the title to said lands vest in plaintiff as heretofore decreed by the court.    And it is ordered by the court that plaintiff make due report as to its compliance with this order on the first day of the next regular term, to-wit, the October term, 1909.    It is further ordered, adjudged and decreed by the court that all costs of this proceeding be taxed against the defendants, and that plaintiff have execution therefor on the payment and discharge by it of the principal note and the interest notes and the cash items hereinbefore set forth.''

The plaintiff showed compliance with the requirements of the interlocutory decree, and presented to the court the notes given in payment of the purchase price by defendants, said notes containing indorsements thereon to the effect that defendants were released from all further liability thereon, and further deposited in court, for the benefit of said William P. Kessler, as required by the interlocutory decree, the sum of $1080.65, and thereupon the interlocutory decree was made final and absolute, and the title to said land was divested out of defendants and vested in plaintiff.    In due time defendants perfected an appeal to this court.

## OPINION.

Appellants first contend that the plaintiff corporation has no right or power to acquire the land in question, and that therefore the court erred in divesting the title to said land out of defendants and vesting the same in plaintiff.    Respondent takes the position that it does have the right and power to acquire the said land, and furthermore, that the question cannot be raised by appellants, but by the State alone in a proper proceeding.    These two propositions will be treated in their order.

It is a well-settled rule that when the organic or statutory law specifies the powers a given corporation

may exercise, or the property it may hold, such speci-

**Powers of Corporations.**

fication by implication excludes all other powers or rights, except such incidental or subordinate rights and powers as may be necessary to an exercise of the powers and rights expressly given. [Blair v. Insurance Co., 10 Mo. 559; Pacific R. R. Co. v. Seely, 45 Mo. 212; State ex inf. v. Lincoln Trust Co., 144 Mo. 562; Carroll v. Campbell, 108 Mo. 559; State ex rel. v. Murphy, 130 Mo. 10; 1 Clark & Marshall on Private Corp., p. 380; 3 Thompson on Corp. (2 Ed.), sec. 2771; Case v. Kelly, 133 U. S. 21.]

The above rule seems also to have found lodgment in our statutory law with reference to the real estate corporations may hold. Section 2990, Revised Statutes 1909, defining and enumerating corporate powers generally, provides in the fourth subdivision thereof that corporations may hold such real estate as the purposes of the corporation shall require, "not exceeding the amount limited in its charter or the law creating it." The respondent corporation was organized under and by virtue of article 11, chapter 12, Revised Statutes 1899 (now article 10, chapter 33, Revised Statutes 1909).

**Benevolent Associations: Power to Hold Land: Art. 10, Chap. 33, R. S. 1909.**

Incorporation under that statute is not authorized except for purposes benevolent, religious, scientific or educational. By section 3433 of said article 10 (R. S. 1909), it is provided that any such corporation, when organized for the above purposes, "may acquire and hold in its own name such *real estate* and buildings as may be necessary for *assembly, library, laboratory* and other rooms requisite for its purposes, and may receive income from such other rooms as may be requisite to the completeness of such buildings." The quoted portion was added to said section by an act approved March 30,

**Laws 1887, p. 115.**

1887. [Laws 1887, p. 115.] Prior to that amendment such corporations were only per-

mitted to acquire and hold shares of stock in a cor-
poration incorporated pursuant to law for the "sole
purpose of erecting or purchasing a hall or building
for the use and benefit of any one or more of such cor-
porations."

Respondent's articles of agreement set forth the
purposes of its incorporation as follows:

"The purposes of this corporation are benevolent,
scientific and educational; they are to promote fish
culture, to promote and facilitate fishing and hunting,
boating, field sports and other rational amusements,
and to promote and provide for intellectual recreation
for its members and guests, and to acquire or lease
such lakes and lands and other property as are neces-
sary for such purposes."

The articles of agreement apparently intended to
also embrace the purposes enumerated in section 1406,
Revised Statutes 1899; but said section, in so far it
enlarges upon the purposes designated as benevolent,
religious, scientific or educational, was declared un-
constitutional in State ex rel. v. Lesueur, 99 Mo. 1. c.
558, and it was omitted from the revision of 1909. The
fact that respondent's articles of agreement enumer-
ated purposes other than benevolent, religious, scien-
tific or educational, could in no way operate to give it
power to acquire real estate for such additional pur-
poses. The reason why the Legislature thus limits the
power of such corporations to acquire real estate be-
comes apparent when it is recalled that associations
incorporating under this article are permitted to do so
without making payment of the incorporation fees or
taxes exacted of manufacturing and business corpora-
tions. If such corporations were given the power to
acquire real estate without restriction, it might lead
to many abuses, and many such corporations might
become holders of large tracts of land, and operate for
pecuniary benefit—a thing which the Legislature
doubtless foresaw and undertook to prevent.

The large tract of land in controversy here consists of portions fit for hunting and fishing purposes, and other portions suitable for agricultural purposes, and it was clearly not necessary that the corporation acquire the same for assembly, library, laboratory, etc., uses in connection with any benevolent, religious, scientific or educational purpose which it might have, and it was not therefore such as the respondent was empowered to acquire and hold. But respondent insists

Defense of Ultra Vires: Who may Raise and When.

that this point can be taken advantage of by the State alone in an appropriate proceeding, and that such defense cannot be invoked by appellants. It is true that an unwarranted exercise of corporate power ordinarily cannot be questioned in a collateral or indirect way by an individual. A careful review of the authorities, however, discloses that this rule is applied to situations quite different from the present one. After the corporation has transgressed its powers and acquired the property, then the general rule above referred to prevails, but where, as here, the corporation has not yet acquired the property, a court of equity will not lend its aid and power to cause to be conveyed to the corporation that which by its charter law it is not permitted to hold, and such a defense is available to an interested individual. [Pacific R. R. Co. v. Seely, 45 Mo. 212; Land v. Coffman, 50 Mo. 243; Garrett v. Kansas City Coal Mining Co., 113 Mo. l. c. 339; 10 Cyc., 1135; Case v. Kelly, 113 U. S. 21; South, Etc., R. R. Co. v. Railroad, 119 Ala. 105; 4 Clark & Marshall, Private Corp., sec. 230, p. 254; 3 Thompson on Corporations (2 Ed.), sec. 2393.]

In the case of Garrett v. Kansas City Coal Mining Co., supra, the court, discussing an analogous situation, says:

"Neither are we embarrassed in this case with questions of estoppel which might arise were we dealing with an unauthorized and *ultra vires* contract

which had already been executed by the corporation
and stockholders. Here we are asked to require the
corporation to perform an executory contract between
others which it would have no authority itself to make.
This we cannot do.''

In Case v. Kelly, supra, the receiver of a railroad
company by suit similar to this, sought to recover
from the defendants certain lands which they, as offi-
cials of the company, had received from divers per-
sons as donations for the company, title having been
taken in their individual names. The court, in de-
nying relief, says:

''It is objected to the principle adopted by the
court that the limitation upon the power of the cor-
poration to receive land is one which concerns the State
alone, and the title to such lands in a corporation can
only be defeated by a proceeding in the nature of a
*quo warranto* on behalf of the State. . . . The rail-
road company is plaintiff in this action, and is seek-
ing to obtain the title to such lands. It has no au-
thority by the statute to receive such title and to own
such lands, and the question here is, not whether the
courts would deprive it of such lands if they had been
conveyed to it, but whether they will aid it to violate
the law and obtain a title which it has no power to hold.
We think the questions are very different ones, and
that while a court might hesitate to declare the title
to lands received already, and in the possession and
ownership of the company, void on the principle that
they had no authority to take such lands, it is very
clear that it will not make itself the active agent in
behalf of the company in violating the law and enabling
the company to do that which the law forbids.'' (L. c.
28.)

The rule is stated by Mr. Thompson as follows:

''A corporation cannot compel the specific per-
formance of a contract to convey land to it where it
has no power to take real estate for the purpose stated

in the contract; and in such case the owner of the land, or his heirs, may defend on the ground of the incapacity of the corporation. Generally where the corporation seeks the necessary aid of a court to perfect its title, then an interested individual may question the corporation's power to take the real estate. . . . A court of equity will not aid a corporation to acquire land where it is expressly or impliedly forbidden so to do either by law or by its charter." [3 Thompson on Corporations (2 Ed.), sec. 2393.]

By reason of the views above expressed it becomes unnecessary to discuss appellants' other assignments of error.

The judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All of the judges concur.